LIST OF EXHIBITS

A-  LETTER TO DOCS DATED OCTOBER 21, 1998
B-  MEDICAL RESTRICTION ORDERS
C-  PAGES FROM DOCS 2003 ORIENTATION MANUAL
D-  PAGES FROM DOCS 2000 ORIENTATION MANUAL
E-  DISCIPLINARY APPEALS
F-  CRA GUIDELINES

EXHIBIT A

STATE OF NEW YORK
DEPT. OF CORRECTIONAL SERVICES
BUILDING #2
1200 WASHINGTON AVENUE
ALBANY, NEW YORK 12226-2050

OCTOBER 21,1998

GLENN S. GOORD
COMMISSIONER

GEORGE J. BARTLETT
DEPUTY COMMISSIONER
CORRECTION FACILITIES

FACT SHEET

- I WAS IN FACILITY FOR FOUR YEARS BEFORE I WAS MADE A "TRACKER"
- I HAVE NO ESCAPE ATTEMPTS OR OTHER SECURITY CONCERNS ON MY RECORD WHICH WOULD CAUSE ME TO BE A "TRACKER"
- I AM NOT A DISCIPLINARY PROBLEM OF ANY KIND
- EVERY ONE OF MY EVALUATIONS IS SATISFACTORY OR BETTER
- I HAVE A GOOD RAPPORT WITH ALL OFFICERS AND STAFF
- I HAVE NO PROBLEMS WITH ANY INMATE IN THE FACILITY
- I HAVE HELD A JOB IN A HIGH SECURITY AREA (FIRE AND SAFETY) WITHOUT INCIDENT FOR TWO YEARS [THROUGH MY JOB I MUST BE THROUGHOUT THE FACILITY IN THE COURSE OF A DAY AND I AM IN CONTACT WITH OFFICERS ALL OVER THE FACILITY. I HAVE NEVER HAD ANY PROBLEMS IN COMPLETING THE TASKS NECESSARY FOR MY JOB, NOR HAVE I EVER HAD A PROBLEM OR CONFLICT WITH ANY OFFICER IN ANY AREA OF THE FACILITY.]
- ANY OF THE OFFICERS I HAVE EVER DEALT WITH, (FROM MY HOUSING UNITS, JOBS, ETC.)WOULD GLADLY GIVE A GOOD RECOMMENDATION ON MY BEHALF
- I AM A MEMBER OF THE LONG TERMERS' COMMITTEE AND THE N.O.W. (NATIONAL ORGANIZATION OF WOMEN), AS WELL AS HAVING SERVED ON THE INMATE LIASON COMMITTEE FOR TWO AND A HALF YEARS OUT OF THE SIX I HAVE BEEN IN BEDFORD HILLS CORRECTIONAL FACILITY
- I HAVE COMPLETED THE RESIDENTIAL A.S.A.T. (ALCOHOL AND SUBSTANCE ABUSE TREATMENT) PROGRAM OFFERED BY THE FACILITY, WHERE I HELD A POSITION OF PEER COUNSELOR AND SUPPORT GROUP LEADER
- I HAVE BEEN A MEMBER OF THE FACILITY FAMILY VIOLENCE PROGRAM SINCE MY ARRIVAL IN THE FACILITY ON SEPTEMBER 18,1992
- I AM SELF TAUGHT IN SIGN LANGUAGE DURING MY TIME OF INCARCERATION AND SERVE AS A VOLUNTEER INTERPRETER FOR THE WOMEN IN THE FACILITY AS NEEDED FOR TIER I DISCIPLINARY HEARINGS,ETC. WHEN REQUESTED BY THE AREA SUPERVISOR OR SERGEANT
- I HAVE MADE MYSELF AVAILABLE FOR VOLUNTEER WORK, AS NEEDED, THROUGHTOUT THE FACILITY (I.E. PREPARATIONS FOR SPECIAL EVENTS, ACCREDITATION, FACILITY INSPECTIONS, ETC.)
- IN MAY 1996 I WAS NOTIFIED BY THE FACILITY MAILROOM THAT I COULD NOT SEND OR RECEIVE "THIRD PARTY OR KITED MAIL" AND I CEASED ALL CORRESPONDENCE WITH JOHN TAYLOR OF MID-ORANGE CORRECTIONAL FACILITY

- IN JULY 1996 I WAS ONE OF THREE WOMEN (THAT I KNOW OF) IN BEDFORD HILLS CORRECTIONAL FACILITY TO RECEIVE A DISCIPLINARY REPORT (A TICKET) FOR SENDING THIRD PARTY OR KITED MAIL. THE OTHER WOMEN AND CIRCUMSTANCES ARE AS FOLLOWS: MELISSA OSTAS: FOUND GUILTY/ GIVEN THIRTY DAYS KEEPLOCK - SERVED TEN AND THE OTHER TWENTY WERE HELD OVER HER HEAD FOR NINTY DAYS. DASHEEN EVANS - TICKET DISMISSED. I WAS FOUND GUILTY - GIVEN A COUNSEL. TWO MONTHS LATER SOMEONE FROM I.G. CAME TO THE FACILITY TO ASK ME QUESTIONS ABOUT JOHN TAYLOR AND OUR CORRESPONDENCE.
- ON SEPTEMBER 20,1996, I WAS CALLED TO THE SERGEANT'S OFFICE AT 4:10PM, PER SERGEANT RICHMOND, WHERE I WAS INFORMED THAT AS OF 4:00PM I HAD BECOME A "TRACKER". I WAS INSTRUCTED TO ALWAYS INFORM THE OFFICER IN THE AREA THAT I WAS LEAVING OR ARRIVING IN HIS/HER AREA. PERIOD. NO EXPLANATION.
- ON DECEMBER 24,1996 I SPOKE WITH SUPERINTENDENT LORD AT THE FACILITY TALENT SHOW REGARDING MY "TRACKER" STATUS. A CONVERSATION SHE NOW FORGETS EVER HAVING. SHE INFORMED ME THAT I WAS MADE A "TRACKER" BECAUSE OF RECEIVING A TICKET FOR THIRD PARTY/KITED MAIL. SHE ALSO TOLD ME TO BE PATIENT AND STAY OUT OF TROUBLE AND THAT ALBANY WOULD SOON FORGET ABOUT ME AND THIS WHOLE "TRACKER" THING WOULD FADE AWAY IN THREE OR FOUR MONTHS.
- I HAVE SEVERAL CORRESPONDENCES TO/FROM THE SUPERINTENDENT IN REFERENCE TO MY "TRACKER" STATUS, AND ONE LETTER WAS SENT TO DEPUTY SUPERINTENDENT OF SECURITY, LIFFLAND ABOUT THE SAME. I HAVE NEVER RECEIVED ANYTHING IN WRITING EXPLAINING WHY I WAS MADE A "TRACKER", WHY THE STATUS HAS NOT BEEN RE-EVALUATED, AND WHY IT WILL NOT BE REMOVED. I HAVE NO CORRESPONDENCES FROM ALBANY OR THE INVESTIGATOR GENERAL'S OFFICE NOR DO I HAVE ANY CORRESPONDENCES FROM THE SUPERINTENDENT (OR ANYONE ELSE) MENTIONING HAVING CONTACTED I.G. OR ALBANY IN REGARDS TO MY "TRACKER" STATUS.
- ACCORDING TO THE FACILITY INMATE GRIEVANCE OFFICE, THERE ARE NO DIRECTIVES OR S.O.P.s (STANDARD OPERATIONAL PROCEDURES) REGARDING THE EXISTANCE OF,OR GUIDELINES PERTAINING TO, "TRACKERS". OFFICERS AND INMATES QUESTIONED ABOUT "TRACKERS" IN THEIR FACILITIES SEEM TO HAVE NO KNOWLEDGE OF SUCH PERSONS.
- I APPLIED FOR A FOUR DAY (AS OPPOSED TO TWO DAY) FAMILY REUNION VISIT AND WAS DENIED. THE REASON I WAS GIVEN WAS: "SOMETHING TO DO WITH YOUR "TRACKER" STATUS"
- I NOW WISH TO APPLY FOR A ROOM EITHER ON THE HONOR FLOOR OR IN THE FISKE COTTAGE, BUT FEAR I WILL BE DENIED BECAUSE I AM A "TRACKER".
- THE SUPERINTENDENT CLAIMS THAT "TRACKERS" CAN DO WHAT EVERY WOMAN IN POPULATION CAN DO, BUT I HAVE BEEN DISCRIMINATED AGAINST BECAUSE I AM A "TRACKER".

EXHIBIT B

NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES

BEDFORD HILLS CORRECTIONAL FACILITY

# SPECIAL MEDICAL RESTRICTIONS/CONSIDERATIONS

3/8/04

**TO:** HOUSING UNIT OFFICER

**FROM:** ______________, M.D.

**RE:** ☐ SHORT TERM / OR / ☒ CHRONIC MEDICAL CONSIDERATIONS (Check One)

**NOTE: THIS DOES NOT EXCLUDE INMATE FROM ATTENDING PROGRAMS, ETC.**

The following inmate: 02 G 1356 DIN

Kellogg (Last Name) Carrie (First Name)

has the consideration (s)/restrictions(s) checked below:

✓ No lifting heavy objects, i.e., filled garbage bags, pails of water, urns, ice buckets, bags of linen, etc. May not pick up packages. No shoveling, or other heavy outdoor work or groundswork. No active sports/activities, like aerobics, basketball, volley ball, paddleball, ping pong, softball, track, jump rope, etc. with jumping or running. No weight lifting.

✓ No pushing/ pulling activities like raking, mopping, sweeping.

____ Must use a walker for ambulation.

____ Keep hands out of water.

____ Ambulate with crutches - non weight bearing.

____ Must use wheelchair for ambulation.

This special medical consideration is valid from 3/8/04 (Date) to 6/8/04 (Date)

Patient must return for follow-up on ______________ (Date)

CC: Original to Inmate Medical Folder
Housing Unit Officer
Program Committee
Inmate
Assignment Supervisor ______________

M96004

NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES
BEDFORD HILLS CORRECTIONAL FACILITY

# MEDICAL SPECIAL ORDER

12/31/07

TO: STATE SHOP

DATE: ____________

FROM: Hab. ____________ M.D.

RE: Need for Bedboard, Extra Mattress, Extra Pillow, or other exceptional or special item, e.g., Hot Water Bottle, Sitz Bath, TENS Unit, etc.

The following inmate was seen today and the following is indicated:

- ☐ an extra mattress
- ☐ an extra pillow
- ☐ crutches
- ☐ a cane
- ☐ a walker
- ☐ a wheelchair
- ☐ OTHER (Specify): lower bunk

DIN# 92G1356

INMATE Kellogg (Last Name) Laurie (First Name)

APPROVED: ____________
Facility Health Services Director

ISSUED BY: ____________ DATE: ____________
Area Sergeant

**NOTE: Once approved by the FHSD, in conjunction with the DSA, a permit will be given to the inmate by the issuing area. This order is good for the duration of an inmate's stay, unless otherwise noted.**

☐ **LONG-TERM ITEM - good for duration of inmate's stay in Bedford Hills Correctional Facility**

☒ **SHORT-TERM ITEM - good until date to return - 3 mos After this return/expiration date, item is contraband in inmate's possession.**

cc: Original to the FHSD for approval and routing
Copy to Inmate Medical Folder
Copy to Housing Unit Officer
Copy to Inmate

NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES

BEDFORD HILLS CORRECTIONAL FACILITY

# SPECIAL MEDICAL RESTRICTIONS/CONSIDERATIONS

**TO:** HOUSING UNIT OFFICER

**FROM:** Haib, M.D.

**RE:** ☐ **SHORT TERM** / OR / ☐ **CHRONIC** MEDICAL CONSIDERATIONS (Check One)

**NOTE: THIS DOES NOT EXCLUDE INMATE FROM ATTENDING PROGRAMS, ETC.**

The following inmate: 99 G 1356 DIN

Kellog — Last Name; Laurie — First Name

has the consideration (s)/restrictions(s) checked below:

✓ No lifting heavy objects, i.e., filled garbage bags, pails of water, urns, ice buckets, bags of linen, etc. May not pick up packages. No shoveling, or other heavy outdoor work or groundswork. No active sports/activities, like aerobics, basketball, volley ball, paddleball, ping pong, softball, track, jump rope, etc. with jumping or running. No weight lifting.

✓ No pushing/ pulling activities like raking, mopping, sweeping.

___ Must use a walker for ambulation.

___ Keep hands out of water.

___ Ambulate with crutches - non weight bearing.

___ Must use wheelchair for ambulation.

This special medical consideration is valid from 12-31-03 (Date) to 2-31-04 (Date)

Patient must return for follow-up on ______________ (Date)

CC: Original to Inmate Medical Folder
Housing Unit Officer
Program Committee
Inmate
Assignment Supervisor ______________

M96004

EXHIBIT C

## THE EXECUTIVE TEAM

Bedford Hills Correctional Facility is managed by an administrative team led by the Superintendent of the facility with the assistance of the First Deputy Superintendent. That team is composed of the Superintendent, the First Deputy Superintendent, and the Deputy Superintendents for Security, Administration, Program and Health Services. Following is a brief description of their roles in the operation of the facility:

**Superintendent** - Responsible for the overall operation and functioning of the facility. Directly supervises the Executive Team to ensure the proper operation of the facility. Provides direction to each major area: Administrative/Support Services, Programs and Security, as well as general oversight of Health Services, Inmate Records and Reception/Classification functions of the facility.

**First Deputy Superintendent** - Fulfills all the responsibilities of the Superintendent and oversees Inmate Grievance Resolution Committee and various other committees.

**Deputy Superintendent for Administrative Services** - Responsible for support services, to include but not limited to Budget and Finance, Business Office, Maintenance, Food Service, Personnel Office, State Shop, etc.

**Deputy Superintendent for Program Services** - Responsible for all program areas, including but not limited to Education, Guidance and Counseling, Volunteer Services, Ministerial Services, Family Violence Program, Hispanic Needs, etc.

**Deputy Superintendent for Security Services** - Responsible for the overall security of the facility, including but not limited to the Disciplinary Office, Package Room, all security personnel and the security aspect of all programs and operations occurring within and connected to the facility.

**Deputy Superintendent for Health Services** - Responsible for oversight of all services provided by the Health Services Unit including acute care, inpatient/outpatient services, referrals to specialists, laboratories, consultants and pharmacy services.

## SENTENCE STRUCTURE / RELEASE DATES

**Indeterminate Sentence** - A sentence having both a minimum term and a maximum term (ex. 4 to 12).

**Determinate ("Flat") Sentence** - A sentence having only a maximum term (ex. 0 to 5).

**Parole Eligibility Date (PED)** - For indeterminate sentences only. This is the last day of your minimum sentence and the date you are first eligible to be released on parole. You will appear at the Parole Board two months before your PED. ***Release by the Parole Board is not guaranteed.***

If the IRC office responds by advising it has confirmed the calculation based on the jail time certificate, you will need to write to the jail where you were in custody to get the time corrected. For assistance, you may go to the Law Library, or consult your attorney.

**Warrants/Detainers** - The IRC office receives and maintains any warrants or detainers. IRC is the liaison with Immigration and Naturalization Services (INS) and will contact INS when you are ready for release. INS hearings are held at Bedford. The IRC Office will send you copies of correspondence relating to warrants, detainers and definite sentences. If you have open/pending charges, it is important to clear them up before you apply for any temporary release program or outside clearance.

**Court Actions** - When the facility receives legal papers that must be served on you, your counselor will serve the papers, fill out the required affidavit of service, and place a copy of the signed affidavit in your Guidance file. S/he may also send a copy to the IRC Office for inclusion in your legal folder. If you are scheduled to go to Supreme, County or Family Court, the facility must receive an original court order to produce you for the court appearance.

**Accuracy of Information** - If you disagree with any information issued to you by the IRC Office, you must supply the IRC Office with original documents for verification. For example: For date of birth, your original birth certificate; for social security number, your original social security card; for paid mandatory surcharge, the original receipt from the sentencing court. Once the information is verified by the IRC office, your records will be adjusted.

## SEXUAL MISCONDUCT

Sexual Misconduct by inmates or staff is not tolerated at Bedford Hills Correctional Facility. ***The Department of Correctional Services has a zero tolerance policy that strictly forbids sexual contact between inmates, and between inmates and staff (see Standards of Inmate Behavior Rule Book).*** Sexual misconduct is illegal. Allegations of sexual misconduct are given to the Inspector General and/or the State Police for investigation and possible prosecution. If you believe you are a victim of sexual misconduct, report it immediately to any member of our Executive Team or to Inmate Grievance. If you are a victim of a sexual assault, report it immediately. Prompt medical care will be provided and necessary physical evidence will be obtained and preserved. For more detailed information about how to identify and report sexual misconduct read the posters on your unit bulletin board.

## INMATE GRIEVANCE PROGRAM

The Inmate Grievance program allows you to resolve problems in an orderly manner. This program is intended to supplement, not replace, the existing formal or informal channels of problem resolution. A grievance is a complaint about the substance or application of any written or unwritten policy, regulation, procedure, or rule of the facility or Department, or the lack of a policy of procedure. You may file a grievance by writing to the Inmate Grievance Office, or file in person by call-out or appointment during a free module on any weekday during normal business hours. Pursuant to DOCS Directive 4040 you may not grieve disciplinary decisions, TAC decisions, Family Reunion decisions, inmate property claims results, FOIL requests, TRC

decisions, media review, OMH or CMC decisions, since there already are appeal processes for these Departmental decisions. You must submit your grievance within fourteen days of the problem or incident. Your complaint will be investigated, and if it cannot be informally resolved, you will be called before the Inmate Grievance Resolution Committee (IGRC). If you believe you are being harassed, your harassment complaint must be filed with the Grievance Office. Allegations of harassment are treated seriously; do not make them frivolously.

### INMATE LIAISON COMMITTEE

The Inmate Liaison Committee consists of a representative group of inmates from various housing units, elected by the general population. These members then choose an Executive Body. The ILC was established to provide effective communication between inmates and the Executive Team, to insure an accurate exchange of information, and to provide a means of bringing suggestions and concerns from inmates, relative to facility operations, directly to the attention of the Executive Team. The ILC Executive Body meets with the Executive Team on a monthly basis. General problems or issues should be brought to the attention of your ILC Floor Representative or an ILC Executive Member. Please remember that the ILC cannot advocate personal complaints or grievances designed to help individuals: The role of the Committee is to represent the needs and concerns of the greater population.

## SECTION 2 - PROGRAM SERVICES

### PROGRAM COMMITTEE / PROGRAM ASSIGNMENTS

**Program Committee** – The Committee has the sole authority for your placement into, or removal from a program or work assignment. It is also the main center for all program information concerning you. You will be placed into a program based on your Program/Earned Eligibility Plan, which you reviewed and signed at Reception. Program placement is also based on the vital operational needs of the facility. Programs are designed to address your needs and to prepare you for a successful transition to your family and community upon release.

**Program/Earned Eligibility Plan** - This plan was developed by your Classification Counselor while you were in Reception and identifies and addresses priority program needs. It focuses on such areas as academic school, counseling programs, vocational training, work assignments, transitional requirements and other activities. The Department will make every reasonable effort to help you meet these needs.

You will meet with your counselor once every three months for a ***Quarterly Review***. During this meeting you and your counselor will discuss your progress in following your Earned Eligibility Plan. Your Quarterly Review is also the designated means through which changes to your phone list, program plan, and inquiries about your classification/security status are made. The counselor will make recommendations to help you satisfy the needs on your plan. Your counselor will update the computer record to reflect changes. ***Completion, or good faith attempts to complete your assigned programs, combined with a good disciplinary record, are seen as positive factors by the Parole Board and the Time Allowance Committee. Program refusals, poor attendance, participation or progress and program removals for disciplinary***

***good disciplinary record.*** You will be given a copy of your Earned Eligibility Determination (granted or denied) in the week prior to your parole hearing.

## MERIT TIME

Merit Time is a law passed on 8/20/97 which allows certain inmates serving an indeterminate sentence to earn a possible two month per year reduction of their minimum term. Eligibility is determined by the nature of the instant offense, criminal history, program completion and institutional adjustment. Only certain crimes are eligible for Merit Time. Violent crimes and most A-1 felonies are not Merit Time eligible. ***A recent change in Merit Time authorizes Merit Time for A-1 drug-offenders under certain circumstances.*** The Merit Time benefit for such offenders is a possible one-third reduction of the minimum term. If you are on parole for a non-eligible crime and you are convicted of an eligible crime, you are not eligible for Merit Time. In order to have a Merit Parole Hearing, if you are eligible, ***you must complete one of the following programs***:

1) **ASAT. (Alcohol and Substance Abuse Treatment);**
2) **G.E.D.;**
3) **Vocational Certificate with six months of satisfactory participation;**
4) **Four hundred hours of community service or outside clearance.**

Additionally, you must have a good disciplinary record. The following make you ineligible for Merit Time: Serious disciplinary infractions such as drug use, assault, sex offense, arson and unauthorized organization; serving 60 days or more of SHU or keeplock; receiving a loss of Good Time as a disciplinary sanction; filing a frivolous lawsuit. If you are Merit-eligible, you will appear before a Merit Board Hearing for possible release.

If you are denied Merit release, the Parole Board will see you again on your original parole hearing date. Any questions or concerns you have about Merit Time can and should be addressed with your counselor. Additionally, you may consult the Law Library for more information and copies of the actual legislation.

## TEMPORARY RELEASE PROGRAM

Temporary Release is a complex program with many factors determining eligibility. ***Most violent crimes are excluded from participation. Any convictions for abscondence or escape will disqualify you.*** A Temporary Release manual is available in the Law Library to provide you with further information. You are also welcome to write to the Temporary Release Chairperson. You may apply for three main types of Temporary Release from this facility:

**Presumptive Work Release (CASAT)** - You may apply for CASAT through your counselor when you are within 30 months of your Parole Eligibility Date. You must have a history of drug use as the program consists of six (6) months of intensive substance abuse treatment followed by Work Release.

EXHIBIT D

# BEDFORD HILLS CORRECTIONAL FACILITY

# INMATE ORIENTATION MANUAL

**This manual is meant to acquaint you with Bedford Hills Correctional Facility, its staff, and how it runs. It is designed for women who are assigned here for a short period of time and we hope it will aid you in being able to understand what is expected of you.**

I. **Who are the members of the Executive team?**

Bedford Hills Correctional Facility is managed by an administrative team led by the Superintendent of the facility with the assistance of the First Deputy Superintendent. That team is composed of the Superintendent, the First Deputy Superintendent, the Deputy Superintendents for Security, Administration, Programs and Health Services. The following is a brief description of their role in the operation of this facility:

**Superintendent** - Responsible for the overall operation and functions of the facility. Directly supervises the Executive Team to ensure the proper operation of the facility. Provides direction to each major area: administrative/support services, programs, and security, as well as general oversight of administration of health services, inmate records, and reception and classification functions of the facility.

**First Deputy Superintendent** - Can fulfill all the responsibilities of the Superintendent and oversees IGRC and various committees.

**Deputy Superintendent of Administration** - Responsible for support services, to include but not limited to Budget and Finance, Business Office, Maintenance Department, Food Services (Mess Hall), Personnel Office, State Shop, etc.

**Deputy Superintendent of Programs** - Responsible for all program areas, including but not limited to Education, Guidance and Counseling, Volunteer Services, Ministerial Services, Family Violence Program, Hispanic Needs, etc.

**Deputy Superintendent for Security** - Responsible for the overall security of the facility, including but not limited to the Disciplinary Office, Package Room, all security personnel, and the security aspect of all programs and operations occurring within and connected to the facility.

**Deputy Superintendent for Health Services** - Responsible for oversight of all services provided by the health unit including acute care, inpatient/outpatient services, referral to specialists, labs and consultants.

II. **What affects my classification and security status?**

**Reception/Classification:** The Reception/Classification program at Bedford Hills is coordinated by a Senior Counselor. Upon arrival a counselor will meet with you and explain the schedule of activities that you must complete as part of the Reception/Classification process. You will be required to have a complete medical examination, take educational tests, be evaluated in terms of your criminal history, mental health history, substance abuse history and have a complete dental screening. **You cannot skip any part; it is required.** Your counselor will review the pre-sentence report, the rap sheet (NYSID), and any other custodial or security related information (disciplinary reports from the county jail, etc.), To generate a classification designation. At this time your counselor will also conduct an interview with you so that you can identify any problems you are experiencing. Be sure at this point to identify any other inmates in the system with whom you have had problems, so that serious issues can be screened as part of an **enemy check**. Only verified enemy claims will be noted on the Department's computerized tracking system.

After the counselor makes a final determination, (s)he will meet with you and you will sign for your facility classification. You will be designated as **maximum, medium, or**

**minimum** security based on this evaluation and a point score. Bedford Hills Correctional Facility is the State's only maximum security correctional facility for women. You must remain here if your status is **maximum** security. Most women with sentences of six or less years left to serve will find themselves on a transfer list. For example, if your sentence is 8-1/3 - 25 years, your minimum is 8-1/3 years, and you will be classified maximum security at least until you have served some years and qualify for a change in status based on time, program and behavior. However, the amount of years between your minimum and maximum sentence (for example, 5-15 years or 5-life) is also considered and may keep you. **You should always work towards lowering your security classification because medium/minimum security status is looked upon more favorably by the Parole Board.** Also, some work assignments depend on lowered status. For example, inmate assignments that permit you to go outside the fence require minimum status. Additionally, transfer requests to other facilities and programs, (e.g., work release) also require lower status. Every three months your counselor will review and evaluate your progress within the facility. It is at this point that transfer requests, program changes and other requests for review of status (e.g., security status, CMC) should be discussed.

You may **appeal** this classification decision to the Senior Counselor, since it can affect how you move through the system.

You will remain in reception status during this initial classification process. Upon completion of this phase, you will begin a reception/assessment phase of testing that will include an orientation to NYSDOCS. A program plan will be developed for you which will identify your needs for counseling and education and vocational training. A counselor will be assigned to work with you to identify recommended programs in which you should participate based on test results. The counselor will complete a program plan that will identify some of the programs in which you will be expected to participate, and this process will also begin to identify the facility to which you will be sent. Remember that the Time Allowance Committee and the Parole Board will review these program plans and check whether you participated in the recommended programs. **The majority of you will be transferred to medium or minimum security facilities, since only women with more than six years to serve, or with some special needs remain at Bedford.** You will be notified if you are assigned to Bedford Hills.

While in Reception, you will live in the reception unit, and will be provided with basic hygiene supplies.

There are certain restrictions that apply to reception inmates with regard to correspondence, outside business orders, and personal property limits, due to the high probability of transfer. When you are received you will be allowed to bring in only the following items:

1. one watch not exceeding $50 in value,
2. one plain wedding band if you are legally married that does not exceed $150 in value and has no stones or protrusions ,
3. one religious medal on a chain not exceeding $50 in value, not having stones and a medal not exceeding 2" in diameter,
4. books, legal and religious,
5. religious articles, such as prayer beads (black only), prayer rug, khimar, etc.
6. legal paperwork and documents.

**While you are in reception, outside purchases will not be processed, since experience has shown us that the item will not be received before you are transferred. Your packages are also restricted in that you cannot receive clothing. Food that you receive must not require cooking, but you will be allowed snacks and other ready to eat foods. You may receive cosmetics and toiletry items while in Reception status, with the same security restrictions for packages as general population inmates which must meet Directive 4911 standards.**

During the reception process, you will have to complete forms that provide information on persons that you want on your **telephone, correspondence, and visiting lists.** There is a phone home program in place at Bedford. During reception, you will have a **grace period of five days** to complete and return your list of up to fifteen phone numbers

EXHIBIT E

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES

APPEAL FORM TO COMMISSIONER
SUPERINTENDENT'S HEARING*

I Laurie Kellogg 92G1356 of Bedford Hills Correctional Facility
(Inmate Name and Number)

wish to appeal a Superintendent's Hearing completed on April 22, 2004.
(Date)

THE SPECIFIC GROUNDS FOR MY APPEAL ARE AS FOLLOWS:

1) This cell search was targeted to further harass me on behalf of DSS T. McElroy.

2) This misbehavior report states the cell search took place on 4/9/04 at approx. 2:30 pm in cell 113C2. In fact, all of my property was removed from my cell at 4:30 pm* and 6:40 pm by Sgt. Notaro, C.O. Macesker, and C.O. Arndt and taken to the Acting Superintendent's Office (DSS T. McElroy's Office) where it was searched and I-64 forms were completed by Officer B. Roger on 4/10/04, (per his statement on tape). Therefore, neither the date, nor the time, nor the location of search are accurate/correct.
* Per 113C/D unit logbook

3) Sgt. Notaro signed this Misbehavior Report, but none of the three other officers involved in bagging, transporting or searching my property co-signed this report.

4) The two t-shirts were left in my cell by an inmate leaving the facility to go home. The unit Officer allowed the inmate to put these t-shirts in my cell when I was off the unit. The shirts were folded. I put them in a storage box and forgot about them. I wasn't even aware they had drawings/pictures on them. I have had these shirts during other cell searches and no other officers have told me they were contraband. I was also unaware that a drawing on an item made it contraband as it didn't alter its use.

5) The socks were drawn on by another inmate and given to me as a Christmas gift. They were presented to me in front of an Officer and a Sergeant, who admired the artwork and did not tell me they were contraband or that I could not accept them. I didn't think they were "altered" when they could still be used in the same way, for the same purpose.

6) As the Vicks Vapor Rub Cream was already in the facility, in the possession of another inmate, (before she discarded them and I retrieved them), I had no way of knowing they were contraband. I still do not know why they are contraband as they do not contain alcohol and were medically issued at Nurse's Screening without prescription or label, to any/all inmates.

L. Kellogg
(Inmate's Signature)

May 17, 2004
(Date)

*Appeals must be submitted within 30 days of receipt of the disposition.

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES

APPEAL FORM TO COMMISSIONER
SUPERINTENDENT'S HEARING*

Administrative Segregation Status Hearing

Laurie Kellogg 92G1356 of Bedford Hills Correctional Facility
(Inmate Name and Number)

wish to appeal a Superintendent's Hearing completed on April 21, 2004.
(Date)

Page 1 of 3

THE SPECIFIC GROUNDS FOR MY APPEAL ARE AS FOLLOWS:

The basis for my appeal involves the fact that I was denied: substantial due process of law, the right to speak with counsel, my right to assistance of available counsel, my right to confront witnesses, my right to review and contest the alleged evidence against me.

My "persecution" is a direct result of DSS McElroy's personal vendetta against me. During this "persecution", I have been subjected to numerous, targeted searches. As a result of these searches, I have been wrongfully singled out for possessing items, that, in my possession, have been deemed "contraband", but not "contraband" in the possession of the majority of the inmates of this facility, who possess these same items. I have been placed in SHU based on my possession of contraband before any alleged contraband was found. I had my cell re-searched for a second time in the same day, in an effort to support DSS McElroy's desire to have me in SHU.

Since being placed in SHU, I have had my prescribed medications for pain and other medically issued items denied to me. I have a number of medical ailments including: Severe hearing loss (requiring bilateral hearing aids), Asthma, Severe TMJ, (Temporal Mandibular Joint Disorder), migraine headaches, full dentures, stomach problems, bilateral snapping hip syndrom, arthritis, and I'm suffering from a degenerative injury to my right shoulder. On May 13, 2004 I suffered from two major asthma attacks, almost dying from the first. This was a result of the staff not responding for so long to my neighbor's cries for help due to a medical emergency. I could not cry out due to the asthma attack. The second attack, on the next duty tour, was a similar situation, and my attack was severe before I received medical attention. On May 15, 2004, it took over half an hour for me to get medical attention for severe chest pains and an asthma attack.

It was apparent upon reconvening the hearing on April 21, 2004, that the Hearing Officer, Mr. Pico, had now been improperly influenced by DSS McElroy who has a personal vendetta against this appellant. While questioning Lt. Smith and DSS McElroy as witnesses on speaker phone, Hearing Officer Pico was leading the witnesses and giving them the answers he wanted to the questions I was attempting to ask. I believe he had already made his decision concerning Administrative Segregation status before reconvening this hearing for completion. I feel he was biased and unable to come to a fair determination in this matter.

(Inmate's Signature)

May 15, 2004
(Date)

*Appeals must be submitted within 30 days of receipt of the disposition.

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES

APPEAL FORM TO COMMISSIONER
SUPERINTENDENT'S HEARING*

I Laurie Kellogg 92G1556 of Bedford Hills Correctional Facility
(Inmate Name and Number)

wish to appeal a Superintendent's Hearing completed on April 21, 2004.
(Date)

Page 2 of 3

THE SPECIFIC GROUNDS FOR MY APPEAL ARE AS FOLLOWS:

Hearing Officer Pico ignored the evidence that a search of my cell was conducted just before I was escorted to SHU and the results of that search was "no contraband found". It was clearly the intent of DSS McElroy to put me in SHU and find a reason to substantiate his actions at a later time. I was put in SHU based on alleged contraband that was supposed to have been in my possession prior to any contraband being found. I believe the intent of the DSS was to punish me in advance for his personal animosities toward me. There were violations of Departmental Rules and Procedures. This hearing was a sham of the Disciplinary Procedure and this was obviously retaliatory, as the first search of my cell on April 9, 2004 provided no contraband".

I requested the presence of my attorney who would have attended this hearing, if allowed, but my request was ~~[illegible]~~ denied. I was denied permission to make telephone calls to my attorney before this hearing. It was determined at a subsequent hearing (on the next day, April 22, 2004) that the original allegations were untrue (i.e. I possessed "a large amount of unauthorized property and contraband, including civilian clothing... acquired from an unknown source"), as the only contraband in my cell consisted of two shirts and a pair of socks that I received from two other inmates as Christmas gifts, and nine tubes of Vicks vapor rub cream that I retrieved from the trash as another inmate was throwing it away. Of the four charges Sgt. Waters accused me of, I was found NOT guilty of three: 108.13, 118.30 and 118.21. I was found guilty of 113.23 and sentenced to two months keeplock suspended for 40 days. This hearing, and my only opportunity to contest the charges against me, took place the day after the completion of the Administrative Segregation hearing.

On tape, Lt. Smith states his recommendation is based upon Misbehavior Reports of 10/5/03, 3/5/04 and 4/11/04, and the large amount of contraband from all three of these searches. Hearing Officer Pico states that "the clock stops at 3:35 pm on 4/9/04 when the recommendation is signed - nothing after that time is to be taken into consideration". DSS McElroy is in agreement with Mr. Pico and makes a statement to the effect that any Misbehavior Report of 4/11/04 doesn't have anything to do with this hearing or the A/S recommendation signed on 4/9/04.

L. Kellogg
(Inmate's Signature)

May 7, 2004
(Date)

*Appeals must be submitted within 30 days of receipt of the disposition.

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES

APPEAL FORM TO COMMISSIONER
SUPERINTENDENT'S HEARING*

I, [illegible] 98B1?? of [illegible] Correctional Facility
(Inmate Name and Number)

wish to appeal a Superintendent's Hearing completed on April 21, 2004.
(Date)

THE SPECIFIC GROUNDS FOR MY APPEAL ARE AS FOLLOWS:

On October [illegible], 2003, the "contraband" items I had were [illegible] processed through the package room in years passed that are no longer permitted [illegible] the package room. These items are believed to have been [illegible] by [illegible] and they are items possessed by most inmates who have been in the facility [illegible] or longer. During the search of 3/5/04, no contraband was found, [illegible]. The search of 4/1/04 - 4/11/04 showed [illegible] contraband [illegible] have already explained, and three bags of excess property that was sent [illegible] contained food, and cookware, which has never been included in [illegible].

Hearing Officer [illegible] refused to allow me to hear "testimony" [illegible] against me. I was also denied the opportunity to see "evidence" against me, the forms of photocopies and To/From Memo [illegible]. He states that the [illegible] information given to him "does not appear to have been provided with the [illegible] of providing false information" and "The confidential information [illegible] reliable". How can he make such statements? He does not know me [illegible] about me. He doesn't know anything about my relationships to [illegible] providing him with information, what their motivations might be, or [illegible] their information might be. I cannot answer to allegations [illegible] what these allegations are. I believe according to Prisoners' Rights [illegible] to see/hear this "evidence" against me so long as the identity [illegible] informant is not revealed.

It would appear that the decision to make [illegible] before any hearing was held. Thus, the entire hearing [illegible] hearing officer was simply going through the [illegible].

I have never been in [illegible] disciplinary [illegible] security [illegible] by DSS [illegible] of [illegible] exemplary facility record. I [illegible] I have never done [illegible] that this decision be reversed.

[Inmate's signature]
(Inmate's Signature)

[illegible]
(Date)

*Appeals must be submitted within 30 days of receipt of the disposition.

EXHIBIT F

**CRA Guidelines:** Draft 8/03
(Crisis Response Aide)

The following is the process/guidelines for deployment:

I. Superintendent or/ designee deems deployment to be initiated

II. M.Petrino,OMH and Correc. Counselor Designee and Watch Commander are contacted that team requires activation:

III. OMH and Correc. Counselor contact team leaders:
C. Millery Din# 93g0595-11EW 22
L.Kellogg DIN # 92g1356-113C 22

IV. A List of inmates to participate is developed by the team( OMH, CC, 2 inmates) This list is then approved by Security.

V. The inmates are gathered at a meeting to outline the issue and directions/ guidelines are developed . These guidelines are written and distributed to Exec. Team, area Sgt. ,CO ,and copy placed in the log book.

VI. The inmates will maintain a log book that will be reviewed by the area security supervisor, OMH and counselor as needed.

VII. Upon completion of the assignment the log books are returned to OMH and a meeting will be conducted to debrief the assignment. To attend will be all inmates involved, area supervisor,

OMH and counselor. The Supt. will be advised of the meeting and may attend as well as any member of the Exec. Team.

**Inmates with training 2003**

| NAME | DIN# | HOUSING UNIT | CELL# |
|---|---|---|---|
| Ann Marie Truscio- | 95g1091 | 11EW | 5 |
| Carol Mickens | -99g1623 | 11 WW | 32 |
| Sharon Richardson- | 91g1854 | 19FI | 9 |
| Jean Coaxum- | 84g0472 | 19FI | 15 |
| Claude Millery- | 93g0595 | 11EW | 22 |
| Michelle Mc Williams- | 93g1549 | 114A | 18 |
| Nora Moran- | 98g1284 | 19 FI | 21 |
| Laurie Kellogg- | 92g1356 | 113C | 2 |

Another class will be held in the Fall 2003.