UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LAURIE KELLOGG,

    Plaintiff,

-against-

NEW YORK STATE DEPARTMENT OF
CORRECTIONAL SERVICES, et al.,

    Defendants.

07 Civ. 2804(BJ)

**DECLARATION IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

**KIM WATSON**, pursuant to 28 U.S.C. Section 1746, declares under penalty of perjury as follows:

1. I am employed by the New York State Department of Correctional Services ("DOCS") and currently hold the position of Inmate Grievance Program Supervisor at Bedford Hills Correctional Facility ("Bedford Hills"). I have held that position since January 2008.

2. As the Inmate Grievance Program Supervisor, I am familiar with the inmate grievance procedure at Bedford Hills including the areas in which inmates can file grievances.

3. Pursuant to DOCS' directive governing the Inmate Grievance Program, which was in effect between April 2004 and February 2007, a grievance is defined as "a complaint about the substance or application of any written or unwritten policy, regulation, procedure or rule of the Department of Correctional services or any of its program units or the lack of a policy, regulation, procedure or rule." See, Directive 4040 § II, annexed hereto as Exhibit A.

4. A harassment grievance is defined as "those grievances that allege employee misconduct meant to annoy, intimidate or harm an inmate." Id.

5. Unlawful discrimination grievances are defined as "those grievances that allege acts or policies which adversely affect individuals based on race, religion, national origin, sex, sexual orientation, age, disabling condition(s) or political belief, except as provided by law."

6. All inmates at Bedford Hills have access to DOCS' Directive 4040 which deals with the Inmate Grievance Program as it is available in the facility law library.

7. The Inmate Orientation Manual provided to inmates at Bedford Hills also defines a grievance as "a complaint about the substance or application of any written or unwritten policy, regulation, procedure or rule of the facility or Department, or the lack of a policy of procedure." See, Plaintiff's Opposition, Exhibit C.

8. Although the Inmate Orientation Manual contains only the definition of a "grievance" and does not specifically name a harassment grievance or an unlawful discrimination grievance, all inmates at Bedford Hills area aware that they can grieve these issues.

9. The underlying facts that comprise the claims plaintiff has raised in this lawsuit, i.e. retaliation, deprivation of property, sexual abuse, sexual harassment, cruel and unusual punishment, due process, equal protection, conspiracy and deliberate indifference to plaintiff's serious medical needs can be grieved through the inmate grievance program since these alleged acts clearly involve DOCS' and Bedford Hills' policy, regulation, procedure or rule. It is a clear violation of DOCS' and Bedford Hills' policies, regulations, procedures and rules to commit any of the foregoing alleged actions against an inmate.

10. Although an inmate cannot grieve a "decision or disposition" resulting from an inmate property claim made by an inmate at the facility, the basis of a claim regarding the deprivation of property can be grieved by inmates. See, Exhibit A § III.

WHEREFORE, defendants motion to dismiss the complaint should be granted in its entirety.

Dated: February 8, 2008
       Bedford Hills, New York

                                                      KIM WATSON

# EXHIBIT A

| | | | | |
|---|---|---|---|---|
| STATE OF NEW YORK<br>DEPARTMENT OF CORRECTIONAL SERVICES<br>**REVISION NOTICE** | TITLE<br>INMATE GRIEVANCE PROGRAM | | No. **4040** | |
| REVISES<br>Dir. #4040 dtd. 08/22/2003 | DISTRIBUTION<br>A  B | PAGE 1 OF 1<br>PAGES | DATE<br>APR 16 2004 | |
| REFERENCES (Includes but are not limited to):<br>Correction Law, Section 139<br>9 NYCRR Part 7005 | APPROVING AUTHORITY<br>[signature] Edward J. McSweeney A/C | | | |

**Add new material underlined. Delete material lined out.**

☐ Section V-A-1, at the middle of page 5; revise the following portions of text as indicated:

1. <u>Filing the complaint.</u> An inmate must submit a complaint to the clerk within fourteen (14) calendar days of an alleged occurrence on an Inmate Grievance Complaint Form (Form #2131). If this form is not readily available, a complaint may be submitted on plain paper. <u>The complaint may only be filed at the facility where the inmate is housed even if it pertains to another facility.</u>

    Note: Exceptions to this time limit <u>or any appeal time limits</u> may be approved by the IGP supervisor based on mitigating circumstances (e.g., attempts to resolve informally by the inmate, ~~referrals back to the IGP by the courts~~, etc.). An inmate may pursue a complaint that an exception to the time limit was denied <u>by filing a separate grievance</u> ~~through the grievance mechanism~~.

    In addition to the grievant's name, Department identification number, housing unit, program assignment, etc., the grievance ~~must~~<u>should</u> contain a concise, specific description of the problem and the action requested and indicate what actions the grievant has taken to resolve the complaint, i.e., specific persons/areas contacted and responses received.

☐ Section V-A-5-c, at the middle of page 7; revise as indicated:

   c. If the grievant believes that a dismissal in his case is not authorized by this directive, he may apply directly to the facility IGP supervisor for review <u>within seven (7) calendar days after receipt of the committee's decision dismissing the grievance</u>. If the supervisor determines that the grievance does not fall into one of the categories cited in this section, then the grievance will be returned to the IGRC for a hearing and recommendation. <u>The supervisor's written response shall be forwarded to the grievant within seven (7) calendar days of receipt. An inmate may pursue a complaint that the IGP supervisor failed to reinstate an improperly dismissed grievance by filing a separate grievance.</u>

☐ Section V-C-2, at the middle of page 8; revise as indicated:

   2. <u>CORC action.</u> The IGP Central Office staff shall date stamp all appeals showing when they were received and shall notify the facility grievance staff in writing that the grievance was received. <u>The facility IGP staff shall forward a copy of the written notice of receipt to the grievant of record.</u>

☐ Section VIII-H, at the middle of page 12; revise as indicated:

   H. <u>Unless otherwise stipulated in this section, a</u>~~A~~ll procedures, rights, and duties required in the processing of any other grievance as set forth in Section V above, ~~unless otherwise stipulated in this section,~~ shall be followed.

| STATE OF NEW YORK<br>DEPARTMENT OF CORRECTIONAL SERVICES<br>**DIRECTIVE** | TITLE<br>Inmate Grievance Program | No. **4040** | |
|---|---|---|---|
| SUPERSEDES<br>Dir. #4040 dtd. 06/08/1998 | DISTRIBUTION<br>A B | PAGE 1 OF 14 PAGES | DATE<br>AUG 22 2003 |
| REFERENCES (includes but are not limited to):<br>Correction Law, Section 139<br>9 NYCRR Part 7695 | APPROVING AUTHORITY<br>Edward J. M. Sweeney<br>Assistant Commissioner | | |

| | | |
|---|---|---|
| I. DESCRIPTION - 1 | H. IGRC Chairperson Selection | 3. Implementation of decisions |
| II. DEFINITIONS - 1 | I. The Grievance clerk | VI. PROCEDURAL SAFEGUARDS 8 |
| III. GENERAL POLICES - 2 | V. PROCEDURES - 5 | A. Advisors |
| A. Inmate's Responsibility | A. First Step, IGRC | B. Reprisals Prohibited |
| B. Grievances must be Personal | 1. Filing the complaint | C. Objection to IGRC Representative |
| C. Visitor Complaints | 2. Informal resolution | D. IGRC Access/Movement within Inst. |
| D. Class Actions not Accepted | 3. IGRC hearing | E. IGRC Interviews of Employees |
| E. Non-Grievable Issues | 4. Committee decision | F. Code of Ethics |
| F. Outside Agencies Excluded | 5. Dismissals | G. Time Limits |
| G. Reasonable Accommodations | B. Second Step, Appeal - superintendent | H. Appeal after Transfer |
| H. Translators | 1. Filing an appeal | I. Procedures for Transient Inmates |
| IV. INMATE GRIEV. RES. COMMITTEE 3 | 2. Referral to the superintendent | J. File Maintenance/Confidentiality |
| A. Minimum Qualifications - IGRC | 3. superintendent's action | K. IGRC Reference Materials |
| B. Selection of Inmate Representatives | 4. Appeal directions | L. Emergencies |
| C. Filling Vacancies between Elections | 5. Filing an appeal | VII. PROCEDURES FOR INMATES IN SHU 10 |
| D. Inmate IGRC Tenure | 6. Implementation of decisions | VIII. HARASSMENT 11 |
| E. Removal of Inmate Representatives | C. Third Step, Appeal - CORC | IX. UNLAWFUL DISCRIMINATION 12 |
| F. Staff IGRC Representatives | 1. Central Office Review Com. | |
| G. Representatives' Job Duties | 3. CORC action | Attachment A - Code of Ethics 14 |

I. DESCRIPTION. The Inmate Grievance Program (IGP) provides each inmate an orderly, fair, simple and expeditious method of resolving grievances pursuant to Section 139, Correction Law. This grievance program includes procedures for inmates to resolve allegations of discriminatory treatment in accordance with the State Commission of Correction regulation, 9 NYCRR, Part 7695.

This program is intended to supplement, not replace, existing formal or informal channels of problem resolution. It is not intended to support an adversary process, but is designed to promote mediation and conflict reduction in the resolution of grievances.

Under this program, any inmate who is personally affected by an issue for which there is no avenue for redress or correction may address a complaint to a facility committee of elected peers and appointed staff members, the Inmate Grievance Resolution Committee (IGRC). If unsatisfied, the inmate may appeal to the facility superintendent; and if still unsatisfied, may appeal to the Central Office Review Committee (CORC).

Directive #4041, "Inmate Grievance Program--Modification Plan" may be utilized by some camps, shock incarceration, CASATC, and work-release facilities when approved by the Director, IGP.

II. DEFINITIONS.

   A. <u>Grievance</u> - a complaint about the substance or application of any written or unwritten policy, regulation, procedure or rule of the Department of Correctional Services or any of its program units, or the lack of a policy, regulation, procedure or rule.

   B. <u>Departmental Grievance</u> - a grievance which affects an inmate during his/her confinement at various facilities throughout the Department.

   C. <u>Institutional Grievance</u> - a grievance in which the grievant is only affected as long as he/she remains a resident of the facility in which the grievance is filed.

| | NO. 4040 Inmate Grievance Program |
|---|---|
| | DATE AUG 22 2003 PAGE 2 OF 14 |

D. **Like Grievances** - those grievances emanating from a substantially similar situation/issue or with a similar action requested, or complaints which could be resolved with the same action.

E. **Harassment** - those grievances that allege employee misconduct meant to annoy, intimidate or harm an inmate.

F. **Unlawful Discrimination** - those grievances that allege acts or policies which adversely affect individuals based on race, religion, national origin, sex, sexual orientation, age, disabling condition(s) or political belief, except as provided by law.

G. **Advisor** - a person who assists the grievant in filing, preparing or expressing the grievant's complaint. An advisor is not a substitute grievant. An advisor is not needed to argue a case since the grievance procedure is not adversarial. An advisor is not needed to appeal a grievance; that is a simple procedure requiring only that the grievant contact the grievance clerk. An advisor is not a direct party to a grievance. Staff members from the IGRC or from the facility at large may serve as advisors. Staff members must be willing to accept this function.

H. **Direct Party** - an individual so uniquely affected by the grievance that fair play dictates that he/she should be afforded an opportunity to provide input prior to any decision and also to appeal any disposition rendered. In harassment allegations, the employee who allegedly committed the misconduct is a direct party.

III. **GENERAL POLICIES.**

A. **Inmate's Responsibility** - An inmate should seek assistance in resolving a complaint through the Guidance and Counseling Unit, program area directly affected, or other existing channels (informal or formal) prior to submitting a formal grievance. However, a facility may not require the use of a "pre-exhaustion" form as a condition for filing a grievance. The failure of an inmate to attempt to resolve a problem on his/her own must not preclude the initial submission of the grievance. Inmates should be encouraged to attempt to resolve their problems on their own. Failure to attempt to resolve a problem on his/her own may result in the dismissal and closing of the grievance at the IGRC hearing.

B. **Grievances Must Be Personal** - An inmate must be personally affected by the policy or issue he/she is grieving, or must show that he/she will be personally affected by that policy or issue unless some relief is granted or changes made. All grievances must be filed in an individual capacity.

C. **Visitor Complaints** - This directive provides for the resolution of inmate-initiated grievances. Visitor complaints shall be processed via the Office of Diversity Management in accordance with Directive #2611.

D. **Class Actions Not Accepted** - Although there are issues which affect a class of people, they are not grievable as class actions. Class actions are not to be instituted through the grievance procedure. Grievances which are raised in terms of class actions should be referred to the Inmate Liaison Committee. However, individuals personally affected by a matter which affects a class of inmates may file a grievance on their own behalf to effect a change with regard to the written or unwritten policy, regulation, procedure or rule.

E. **Non-Grievable Issues** - Some grievances request actions that are not obtainable via the IGP. These cases, although initially accepted as grievances, may result in dismissal at the IGRC hearing. In such cases, the grievant shall be directed to the appropriate mechanism whereby he/she can seek the solution requested. The individual decisions or dispositions of any current or subsequent program or procedure having a written appeal mechanism which extends review to outside the facility shall be considered non-grievable. Specifically, the individual decisions or dispositions of the following are not grievable: Temporary Release Committee, Central Monitoring Case status, Time Allowance Committee, Family Reunion Program, Media Review, disciplinary proceedings, inmate property claims (of any amount) and records review (Freedom of Information Requests, expunction). However, the policies, rules, and procedures of any of these programs or procedures may be the subject of a grievance.

F. <u>Outside Agencies Excluded</u> - Since other agencies (e.g., the Division of Parole, Immigration and Naturalization Services, the Office of Mental Health, etc.) are not under the supervision of the Commissioner of the Department of Correctional Services, any policy, regulation or rule of outside agencies, or action taken by an outside agency, is not within the jurisdiction of this grievance procedure.

G. <u>Reasonable Accommodations</u> - The IGP supervisor will ensure that disabled inmates are provided the necessary assistance to facilitate their access to and utilization of the IGP. Reasonable accommodations shall include, but not be limited to, meetings with inmates at accessible sites and the provision of qualified sign language interpreters for those deaf and hard-of-hearing inmates who use sign language to communicate. Copies of all grievance decisions concerning reasonable accommodations for deaf or hard-of-hearing inmates shall be sent to the ADA coordinator in Central Office.

H. <u>Translators</u> - Translators will be utilized to facilitate access for those inmates who do not speak English.

IV. INMATE GRIEVANCE RESOLUTION COMMITTEE (IGRC). Pursuant to Section 139 of the Correction Law, a facility's IGRC must be a five-member body consisting of two voting inmates, two voting staff members, and a nonvoting chairperson. The nonvoting chairperson may be an inmate, staff member, or a volunteer associated with the facility's program. There shall be at least two alternate inmate representatives, two alternate staff representatives, and four nonvoting chairpersons in each facility. Prior to the establishment of an IGRC, and from time to time, the Superintendent shall determine whether an institution's size warrants additional alternates or nonvoting chairpersons.

The IGP supervisor supervises and coordinates IGP activities of each inmate and staff representative, clerk and chairperson.

A. <u>Minimum Qualifications for IGRC Inmate Representatives and Clerks.</u>

1. An inmate must have completed high school or obtained a G.E.D. equivalency certificate to be eligible to function as an IGRC representative or clerk.

2. An inmate above the eighth grade level is eligible to participate as an IGRC representative or clerk as long as he or she is enrolled in one, unpaid module of school and remains enrolled in school until a G.E.D. certificate is earned.

B. <u>Selection of Inmate Representatives.</u>

1. The inmate representatives and alternates shall be elected by their peers.

2. The IGP supervisor shall submit a nomination and election procedure for his/her facility to the Director, IGP, for approval.

3. The approved nomination and election procedure shall be conspicuously posted five (5) working days prior to nominations being held.

C. <u>Filling Vacancies Between Elections.</u> The alternate inmate representatives, those placing third or fourth in the most recent election, will be utilized to fill a vacancy between elections.

When there is a need for additional inmate representatives or alternate representatives to complete a term until the next regular election, the supervisor has the option of:

1. exhausting the most recent election list in numerical sequence for representatives;

2. having the current IGRC agree upon the appointment of a new representative who meets with the approval of the superintendent; or

3. holding another election.

D. <u>Inmate IGRC Tenure.</u> The term shall be six months. Representatives who are unseated will return to their former job assignments whenever feasible. However, leave of absence from a former job assignment may not exceed seven months. The inmate representative's position is a full-time assignment unless otherwise authorized in writing by the Director, IGP.

E. <u>Removal of Inmate Representatives.</u> Before an elected inmate representative or an inmate representative who has permanently replaced an elected representative of the IGRC may be removed

09/04/2003 THU 15:70 FAX 2084 B7355   Case 1:07-cv-02804-BSJ    Document NYSDOCSCPUSSED 02/08/2008    Page 9 of 19    NYC 9 of 19    @005

NO. 4040  Inmate Grievance Program

DATE   AUG 22 2003   PAGE 4 OF 14

from his position on the committee or transferred to another facility, a limited due process hearing must be held. When the inmate is served with the notice of charges, the notice must indicate that the affirmation of these charges may result in removal from the IGRC. This hearing may be a disciplinary Tier III hearing or an IGRC impeachment hearing (procedurally the same as a Tier III hearing). The hearing determines whether or not the representative should be removed from his representative position and for how long he should be precluded from holding a representative position.

Although other sanctions may result from a disciplinary Tier III hearing, no other sanctions may result from an IGRC impeachment hearing.

If an elected inmate representative or inmate representative who has permanently replaced an elected representative of the IGRC requests a transfer out of his/her facility or reassignment to another program, the inmate must sign a resignation vacating the protection afforded these representatives under Johnson v. Ward prior to realizing that transfer or reassignment.

In order to prevent improper transfers of IGRC representatives, the following identification procedures must be followed:

1. The IGP supervisor or the superintendent is responsible for notifying the following areas of an inmate's status as an IGRC representative within 24 hours of his election or appointment to the committee:

   a. Director, Inmate Grievance Program
   b. superintendent
   c. first deputy superintendent
   d. all deputy superintendents
   e. inmate records coordinator
   f. review officer - disciplinary

2. A non-permanent marker identifying the inmate as an IGRC representative which conspicuously alerts any reader that this inmate may not be transferred without a due process hearing shall be attached to or provided for:

   a. the Guidance and Counseling Unit folder;
   b. the inmate records coordinator's office folder/card; and
   c. Disciplinary Office.

3. The IGP supervisor or the superintendent is responsible for notifying the individuals cited in Section IV-E-1 above when an inmate is no longer a full-time representative and for removing the identifying document from the locations cited in section IV-E-2 above within 24 hours.

   If an inmate representative's presence or conduct at a facility creates an emergency and transfer is immediately necessary to protect the facility or its personnel, the superintendent is responsible for notifying the superintendent of the receiving facility of the need to conduct that hearing as soon as practicable, for providing the superintendent of the receiving facility with all documentation necessary to hold such a hearing and for notifying the Director, IGP, of the transfer. These actions will be taken within 24 hours of the inmate representative's transfer.

F. Staff IGRC Representatives. The staff representatives and alternates shall be selected by the superintendent from an established list of personnel who have successfully completed a training course designed specifically for individuals who will be serving in the capacity of IGRC representatives.

In order for the IGP to function effectively and in accordance with specified time limits, the superintendent must insure that trained staff coverage is made available to the IGP.

G. Representatives' Job Duties. Both the inmate and staff IGRC representatives are responsible for the job duties enumerated in the IGP Training Manual under the supervision of the IGP supervisor.

09/04/2003 THU 11:07 FAX 8048 8537555 NYSDOCS COUNSEL @006
Case 1:07-cv-02804-BSJ Document 13 Filed 02/08/2008 Page 10 of 19

| | NO. 4040 Inmate Grievance Program |
|---|---|
| | DATE AUG 22 2003 PAGE 5 OF 14 |

H. **IGRC Chairperson Selection.** Chairpersons for IGRC hearings shall be selected by the IGP supervisor from a list submitted by the IGRC representatives.

I. **Grievance Clerks.**

   1. A grievance clerk, and such additional clerks as may be needed, shall be selected by the IGP supervisor after consultation with the superintendent.

   2. All clerks will return to their former job assignments whenever feasible. Reasonable assurance of returning to their former job assignments will be maintained for a period of twelve (12) months.

   3. The clerks shall report to and take direction from the IGP supervisor. If the supervisor has personal knowledge of or reliable information regarding the adverse behavior of a clerk, he/she shall recommend dismissal setting forth the reasons in writing to the superintendent, at which time the clerk will be suspended pending a final decision of the Director, IGP. The superintendent's recommendation, accompanied by a copy of the supervisor's report, will be forwarded to the Director, IGP, for final determination.

V. **PROCEDURES.**

Note: If an inmate is deaf or hard-of-hearing, any expression of difficulty in communicating or understanding shall be considered a request for assistance. Reasonable accommodations, including a sign language interpreter, if needed, and a grievance clerk will be assigned to assist and ensure the inmate's full access to all steps in the grievance process.

A. **First Step, Inmate Grievance Resolution Committee (IGRC).**

   1. **Filing the complaint.** An inmate must submit a complaint to the clerk within fourteen (14) calendar days of an alleged occurrence on an Inmate Grievance Complaint Form (Form #2131). If this form is not readily available, a complaint may be submitted on plain paper.

   Note: Exceptions to this time limit may be approved by the IGP supervisor based on mitigating circumstances (e.g., attempts to resolve informally by the inmate, referrals back to the IGP by the courts, etc.). An inmate may pursue a complaint that an exception to the time limit was denied through the grievance mechanism.

   In addition to the grievant's name, Department identification number, housing unit, program assignment, etc., the grievance must contain a concise, specific description of the problem and the action requested and indicate what actions the grievant has taken to resolve the complaint, i.e., specific persons/areas contacted and responses received. The IGP Supervisor shall review the grievance complaint and designate the grievance code and title. If the IGP Supervisor determines that the grievance may be a harassment or discrimination grievance, it shall be processed in accordance with the respective expedited procedure (section VIII or IX). The clerk shall consecutively number and log each grievance at the time of receipt.

   Note: "Like grievances" may be consolidated at the option of the IGP supervisor or IGRC. "Like grievances" are those grievances emanating from a substantially similar situation/issue, or with a similar action requested or complaints which could be resolved with the same action. The grievances shall be assigned one grievance calendar number. The first complaint received will be given the next sequential grievance number and logged upon receipt. The grievants shall select three or four spokespersons from their number to be grievants of record and to represent them at the hearing to ensure the smooth and expeditious processing of the cases. Any like complaint submitted at this time or during the processing of the grievance may be addressed under the same grievance calendar number. A list of every inmate's name who submitted a complaint on the issue shall be included with the grievance materials and submitted with any appeal which may result. Every effort will be made to notify all of the grievants of the response of each level of the IGP to which the grievance is appealed either by written response, posting on inmate bulletin boards or radio announcement. This does not mean that every complainant will always receive an individual written response. However, the three or four grievants of record will each receive a written response from each level that the grievance

| NO. 4040 | Inmate Grievance Program |
|---|---|
| DATE | AUG 22 2003 |
| | PAGE 6 OF 14 |

reaches. If none of the grievants of record appeal the grievance to the next level, any one inmate who submitted a complaint may continue the appeal through the IGP. Any inmate on the list of those submitting a complaint should be given the grievance calendar number of the grievance of record to submit to the court in order to verify exhaustion of the IGP. This procedure will allow for the fair, orderly, simple and expeditious processing of all grievances filed.

2. <u>Informal resolution</u>. The representatives of the IGRC shall have up to seven (7) working days to review a grievance and resolve it informally. If the matter is so resolved to the satisfaction of the grievant, the resolution and the grievant's consent must be entered on the Inmate Grievance Complaint Form.

3. <u>IGRC hearing</u>. If there is no resolution, the full committee shall hear and take action on the complaint. The role of the IGRC is to resolve grievances or make recommendations for the resolution of the grievances filed. A hearing, if necessary, must take place within seven (7) working days after receipt of the grievance.

   The clerk, together with the staff, shall schedule the hearing and make certain that the grievant, all direct parties to the grievance, and witnesses, if any, are afforded an opportunity to appear, except as exempted in Section II-G and Section VII-I. Any inmate whose confinement status precludes his/her attendance at an IGRC hearing and who will be released within thirty (30) calendar days shall be given the option of having the hearing held in his absence or postponed until his release from confinement. The grievant's decision shall be obtained in writing. If the grievant is not scheduled for release from confinement within thirty (30) calendar days, the hearing shall be held in his absence. If any person elects not to appear, the clerk shall so inform the IGRC. If a grievant does not appear for the hearing without a legitimate reason (visit, parole hearing, program committee, sick call, keeplock, etc.), the IGRC will hold a hearing in absentia and has the authority to dismiss and close the grievance by majority vote (3 of 4) or to make a recommendation on the action requested and forward same to the grievant. If the grievant misses three (3) scheduled hearings due to legitimate reasons, the IGRC shall act on the grievance at the third scheduled hearing.

   The full IGRC shall conduct the hearing at the time and place set. The grievant or his/her advisor and any other direct party to the grievance may present relevant information, comments, or other evidence in furtherance of their respective positions. The IGRC shall be the judge of the relevance and materiality of the evidence offered.

4. <u>Committee decision/recommendation</u>. After the chairperson closes the hearing, the committee shall deliberate in private session. Its decision must be communicated to the grievant and any direct party in writing with reasons stated within two (2) working days. In the IGRC's discretion, it may also communicate its decision to the grievant orally immediately after its deliberations.

   Matters which neither require superintendent/Central Office action nor involve changes in policy may be resolved by agreement of the committee, the inmate, and the party directly affected. Committee decisions which do require superintendent or Central Office action, including, but not limited to, changes in institutional or Departmental policy or procedure, shall be in the form of recommendations. They must be transmitted to the superintendent for action and response. Matters on which the committee cannot reach a decision by majority vote shall also be transmitted to the superintendent for action and response.

5. <u>Dismissals</u>.
   a. If the IGRC, after a hearing determines by majority vote, that:

      (1) the grievant has made no effort to resolve the complaint through existing channels;

      (2) the grievant has not been, or will not be, personally affected by the issue in his/her complaint;

      (3) the grievant is seeking a decision or an appeal of a decision otherwise attainable through the established procedures for:

         (a) Temporary Release, Family Reunion and Media Review Programs,

      (b) Disciplinary and Time Allowance Committee Proceedings,

      (c) Central Monitoring (CMC), Inmate Claims, or Record's Review (Freedom of Information Requests, expunction) procedures, or

      (d) any other program or procedure having a written appeal mechanism which extends review to outside the facility (See Section III-E);

    (4) the grievant is seeking action with respect to any policy, regulation, rule or action of an agency not under the supervision of the Commissioner of Correctional Services (see Section III-F); or

    (5) the grievance is institutional in nature and only affects or no longer affects a grievant who is no longer in the facility (per Section VI-H), the committee may dismiss and close the grievance.

  b. In such cases, the committee shall clearly cite the portions of this section and of section III-A, B, E or F, or section VI-H of this Directive which provide the basis for dismissal, and shall, where appropriate, refer the grievant to appropriate existing mechanisms.

  c. If the grievant believes that a dismissal in his case is not authorized by this directive, he may apply directly to the facility IGP supervisor for review. If the supervisor determines that the grievance does not fall into one of the categories cited in this section, then the grievance will be returned to the IGRC for a hearing and recommendation.

  d. If there is less than a majority vote as to whether or not the grievance is a grievable issue, then the IGRC will hear the grievance and provide its recommendations with reasons stated on the specific requested action(s).

B. <u>Second Step, Appeal to the Superintendent.</u>

  1. <u>Filing an appeal.</u> Within four (4) working days after receipt of the committee's written response to the grievance, the inmate or any direct party to the grievance may appeal the IGRC action to the superintendent by filing an appeal with the grievance clerk. If no appeal is filed upon denial by the IGRC, it will be presumed that the grievant or direct party accepts the committee's recommendation.

  2. <u>Referral to the superintendent.</u> In all cases where action by the superintendent is required, the grievance papers and all relevant supplemental data shall be transmitted to the superintendent. Such transmittal shall be within one (1) working day after receipt of an appeal.

  3. <u>Superintendent's action.</u> The superintendent's office shall date stamp all grievances forwarded showing when they were received. The superintendent or his designee shall determine if the grievance is Departmental in nature.

    a. <u>Departmental issue.</u> If the matter concerns an altering or revision of a Departmental policy/directive, the superintendent shall promptly forward the grievance papers and a recommendation regarding said policy to the IGP supervisor for forwarding to the Central Office Review Committee (CORC), which shall render a decision in accordance with the third step. Such transmittal must be within five (5) working days from the time the appeal was received. The grievant, the grievance clerk, and the direct party, if any, shall receive notice of said transmittal. Departmental issues which do not involve creation or revision of a Departmental policy or directive shall be answered by the superintendent within ten (10) days from the time the appeal was received.

    b. <u>Institutional issue.</u> In all institutional matters, the superintendent shall render a decision on the grievance and transmit said decision, with reasons stated, to the grievant, the grievance clerk, and direct party, if any, within ten (10) working days from the time the appeal was received.

  4. <u>Appeal directions.</u> The Superintendent's Response Form (Form #2133) contains simple directions on how this decision may be appealed to the next level.

  5. <u>Filing an appeal.</u> Within four (4) working days after receipt of the superintendent's written response to the grievance, the inmate or any direct party to the grievance may appeal the

09/04/2003 THU 15:42 FAX 9184577955 NYSDOCSCOUNSEL → → → NYC AG
Case 1:07-cv-02804-BSJ   Document 13-3   Filed 02/08/2008   Page 13 of 19
@009

NO. 4040  Inmate Grievance Program
DATE AUG 22 2003  PAGE 8 OF 14

superintendent's action to the CORC by filing an appeal (Form #2133) with the grievance clerk.

The grievance clerk shall transmit the signed appeal and the accompanying grievance papers to the IGP supervisor within one (1) working day after receipt of the signed appeal statement. The supervisor must forward appeals within five (5) working days to the CORC.

6. <u>Implementation of decisions</u>. The IGP supervisor and/or the superintendent must obtain verification of compliance with superintendents' responses which require some form of implementation. This verification must be filed with the grievance.

C. <u>Third Step, Appeal to the Central Office Review Committee (CORC)</u>.

1. <u>The CORC</u>. The CORC shall consist of the Deputy Commissioner and Counsel, Deputy Commissioner for Correctional Facilities, Deputy Commissioner for Program Services, Deputy Commissioner for Administrative Services, and the Deputy Commissioner and Chief Medical Officer, or their designees expressly authorized to act for them. A representative of the Office of Diversity Management will attend CORC hearings and have input on grievances alleging discrimination, but will not vote. CORC provides dispositions on grievances appealed or passed through to the Commissioner by determining how they affect Departmental and/or institutional policy. Decisions are then rendered that are in the best interest of the Department as well as the grievants.

The CORC functions on behalf of the Commissioner and under his authority. CORC decisions have the effect of directives. Decisions requiring remedial action must be implemented by the facility and/or Departmental office to which they apply.

The Director, IGP, is not a voting member of the CORC. The Director will, however, be responsible for the administrative function of the IGP in all of its aspects. The Director, IGP, as the Commissioner's designee, must insure implementation of CORC decisions.

2. <u>CORC action</u>. The IGP Central Office staff shall date stamp all appeals showing when they were received and shall notify the facility grievance staff in writing that the grievance was received.

The CORC shall review each appeal received at its level, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the grievant, the grievance clerk, the superintendent, and any direct parties within twenty (20) working days from the time the appeal was received.

3. <u>Implementation of decisions</u>. The Director, IGP, must obtain verification of compliance with CORC dispositions. This verification must be filed in the Central Office and facility grievance folders.

VI. PROCEDURAL SAFEGUARDS.

A. <u>Advisors</u>. During the grievance steps, an inmate may present a grievance unaided, or may be advised or assisted by a staff member or another inmate of his choosing subject to the restrictions set forth in Sections II and VII-I of this directive.

B. <u>Reprisals Prohibited</u>. No reprisals of any kind shall be taken against an inmate or employee for good faith utilization of this grievance procedure. An inmate may pursue a complaint that a reprisal occurred through the grievance mechanism.

A grievant shall not receive a misbehavior report based solely upon an allegedly false statement made by the inmate to the grievance committee.

C. <u>Objection to IGRC Representative</u> - No inmate will take part in the resolution of a grievance over the grievant's objection. If a grievant objects to both inmate representatives and both alternate inmate representatives, then the two staff representatives shall hold the hearing and provide a recommendation. An inmate representative may not function as a voting representative at a hearing on his/her grievance. An alternate inmate representative must be utilized. A staff representative may

not function as a voting representative at a hearing on a grievance in which that staff person is a direct party. An alternate staff representative must be utilized.

D. IGRC Access/Movement Within The Institution.

1. A pass system (institutional or point to point) which permits inmate representatives, and grievance clerks to perform their specified duties relating to the IGP is to be developed in accordance with the specifications established by the superintendent. Mandatory security restrictions will preclude inmates from entering certain areas of the facility.

2. At any facility where either an institutional or point-to-point pass system is not feasible, the superintendent must develop a procedure ensuring the IGRC a realistic method of obtaining information necessary to address grievances within established time frames while maintaining confidentiality. This procedure must be in writing and approved by the Director, IGP.

3. Upon written recommendation of the IGP supervisor and with the approval of the Director, IGP, the superintendent may restrict or remove IGRC pass privileges from a specific inmate.

E. IGRC Interviews of Employees.

1. Formal interviews with staff members, if necessary for obtaining data to be used by the IGRC, should be conducted jointly by an inmate and staff representative, whenever feasible.

   It is imperative to realize, however, that mandatory security restrictions preclude inmates from entering certain areas of the facility. Employees should be questioned in a diplomatic and reasonable manner.

2. The intent of the IGP is not one of an adversary process. There are certain situations which due to their sensitive nature are best investigated by only a staff member of the IGP. In situations where inmate representatives cannot accompany staff representatives on an investigation, the inmate representatives shall provide the staff representatives with the questions they would like answered. The staff representatives shall make every effort to obtain the answers to these questions and provide the responses to the inmate representatives. A second alternative is to hold staff interviews in the Grievance Office.

   This does not preclude the accomplishment of simple and expeditious resolutions by a staff phone call or visit to the area in question.

F. Code of Ethics. A Code of Ethics (see Attachment A - Form #2141) for IGRC staff and inmate representatives, clerks, and chairpersons has been established to strengthen the credibility and effectiveness of the IGP. Violations of this code may result in removal from participation in the IGP.

Inmate representatives may be removed from the committee only in accordance with procedures set forth in Section IV-E above.

The IGP supervisor is responsible for insuring that the full-time and alternate IGRC Representatives have read, understand and received a copy of the Code of Ethics - (Form #2141) (See Attachment "A").

G. Time Limits. Time limit extensions may be requested at any level of review, but such extensions may be granted only with the written consent of the grievant. Absent such extension, matters not decided within the time limits may be appealed to the next step.

H. Appeal After Transfer.

1. An inmate transferred to another facility may continue an appeal of a Departmental grievance.

2. An institutional grievance brought by an inmate who was transferred, released, or paroled must be investigated and brought to an IGRC hearing. However, if the IGRC majority (3 of 4) determines that:

   a. the grievance is moot in that it only affected or no longer affects the specific grievant, or

   b. the issue being grieved has been decided by the CORC within the past year (from date instant grievance was filed), then the IGRC shall dismiss and close the grievance. A copy of

the CORC decision relied upon shall be filed with the dismissed grievance and cited within the IGRC's decision.

3. If the matter at hand does affect other members of the facility population and has not been reviewed by CORC within the year, then the IGRC shall provide a recommendation on how to resolve the matter and forward the case to the superintendent for a determination. Upon receipt of the superintendent's decision, the IGP supervisor shall prepare a Case History and Record and forward all case materials to the CORC for a final disposition on the case.

4. Any institutional grievance brought by an inmate who has been transferred, released or paroled and is pending at the superintendent's level is to be processed consistent with Section VI-H-3 above.

I. Procedures for Transient Inmates. - Each correctional facility housing a reception/classification/transit inmate population must develop and implement a written procedure insuring all inmates access to the IGP. This procedure must be approved by the Director, IGP.

J. File Maintenance/Confidentiality. Grievance files will be maintained in a specific area to be utilized by the IGRC and the grievance clerk. No copies of grievance documents may go into the grievant's central file or facility file without the grievant's direct written consent. Likewise, no copies of the grievance documents may go into an employee's file without the direct written consent of the employee. No grievance documents shall be disseminated to persons other than the grievant, a direct party, or an individual involved in the review process without the approval of the IGP supervisor.

The superintendent is responsible to ensure the confidentiality and maintenance of grievance records. Complete grievance records must include the original grievance, responses from each level of review, investigation, referenced documentation and verification of implementation, when appropriate.

Grievance files shall be preserved for at least three (3) years following dates of final disposition. In order to ensure preservation, it is Department policy to maintain grievance files for the current year plus the previous four calendar years.

K. IGRC Reference Materials. The IGRC at each facility is responsible for maintaining an up-to-date set of Code "A B" Departmental Directives and a set of the IGP Monthly Index of Written Opinions. A copy of the IGP Monthly Index of Written Opinions must also be maintained in the facility law library.

L. Emergencies. The IGP supervisor shall refer any grievance of an emergency nature directly to the appropriate response level (superintendent or CORC) with the authority to ensure an immediate or expeditious, meaningful response.

An emergency shall include, but is not limited to, a situation, action, or condition in which an inmate's or an employee's health, safety, or welfare is in serious threat or danger. The supervisor will determine if a grievance falls within this category.

VII. PROCEDURES FOR INMATES IN SPECIAL HOUSING UNITS. The following procedure for filing grievances by inmates in special housing units is to be instituted as minimal standards at all New York State correctional facilities:

A. A supply of Inmate Grievance Complaint Forms - (Form #2131), will be maintained in all special housing areas and will be given to inmates requesting them. The area supervisor is responsible for ensuring that a supply of these forms is available at all times.

Additional forms, when needed, will be obtained from the IGP supervisor's office.

B. Envelopes will be given to inmates for use in forwarding their completed grievance forms to the Inmate Grievance Office. The sealed envelopes will assure the confidentiality of the inmate's complaint while enroute to the Inmate Grievance Office.

C. Area supervisors will ensure that the completed grievance forms are placed in sealed envelopes, collected and forwarded to the Inmate Grievance Office.

D. Any special housing areas which have centrally located Inmate Grievance boxes shall use such boxes in place of sealed envelopes for the depositing of Inmate Grievance correspondence.

These boxes are to be kept locked at all times and only the IGP supervisor and staff representatives (IGRC sergeant/officer) will have keys to these boxes. The contents of these boxes will be collected by a member of the Inmate Grievance Office at least two (2) times per week. Broken boxes or locks will be reported to the IGP supervisor immediately, and he or she will arrange for their repair or replacement. In the interim, grievance forms shall be submitted as stated in paragraph C above.

E. A staff member (sergeant, officer or grievance supervisor) of the IGRC will make rounds of all* special housing areas at a reasonable time at least once a week. These rounds will allow for direct access to a member of the grievance program. It will allow inmates with writing or other communication problems the opportunity to request assistance. Inmates wishing to file a grievance and who have difficulty doing so will be provided the necessary assistance upon request. Any problems of this nature will be reported to the IGP supervisor. The IGP supervisor will work with the deputy superintendent(s) of programs and/or security to obtain the necessary assistance for inmates with the above-mentioned problems.

*Exception: At Southport Correctional Facility, rounds will be conducted at a reasonable time at least once every two weeks (14-days).

F. A grievant confined to SHU who will be released within thirty (30) calendar days shall be given the option of having the hearing held in his absence or postponed until his release from confinement. The grievant's decision shall be obtained in writing. If a grievant is not scheduled for release from confinement within thirty (30) calendar days, the hearing shall be held in his absence.

G. The IGP supervisor shall monitor and insure the proper functioning of the grievance procedure in the SHU's. The superintendent, at his or her discretion, may grant direct access to the full IGRC, or to either an inmate member or a staff member of the Grievance Office for those inmates in certain special housing areas such as Reception or Transient Units.

H. The time limits for the processing of grievances as delineated in Section V above also apply to grievances submitted from special housing units.

I. There is a security interest in restricting confined inmates access to other inmates. For clarification it is reasonable to prohibit any inmate in SHU from utilizing another inmate as an advisor or from serving as an advisor to another inmate. Staff members from the IGRC or from the facility at large can serve this function. The staff member must be willing to accept this function.

It also would be reasonable to limit the inmates in any pool of advisors for keeplocked inmates to inmate clerks or inmate representatives on the IGRC, and to prohibit keeplocked inmates from serving as advisors to other inmates.

VIII. HARASSMENT. Allegations of employee harassment are of particular concern to the administrators of Department facilities. Therefore, the following expedited procedure for the review of grievances alleging harassment shall be followed.

A. An inmate who wishes to file a grievance complaint that alleges employee harassment shall follow the procedures set forth in section V-A-1, above.

Note: An inmate who feels that he/she has been the victim of employee misconduct or harassment should report such occurrences to the immediate supervisor of that employee. However, this is not a prerequisite for filing a grievance with the IGP.

B. All grievances alleging employee misconduct shall be given a grievance calendar number and recorded in sequence with all other grievances on the grievance clerk's log (Form #2136). All documents submitted with the allegation must be forwarded to the superintendent by close of business that day.

C. The superintendent or his/her designee shall promptly determine whether the grievance, if true, would represent a bona fide case of harassment as defined in section II above. If not, then it shall be returned to the IGRC for normal processing.

09/04/2003 THU 15:45 FAX 9184577655 NYSDOCSCOUNSEL → NYC AG ☒013
Case 1:07-cv-02804-BSJ Document 13-3 Filed 02/08/2008 Page 17 of 19

NO. 4040 Inmate Grievance Program
DATE AUG 2 2 2003 PAGE 12 OF 14

D. If it is determined that the grievance is a bona fide harassment issue, the superintendent shall:

1. initiate an in-house investigation by higher ranking supervisory personnel into the allegations contained in the grievance;

2. request an investigation by the Inspector General's Office; or

3. if the superintendent determines that criminal activity may be involved, request an investigation by the New York State Police, Bureau of Criminal Investigation.

Once a grievance has been referred to the superintendent and determined to be an allegation of harassment, that grievance cannot be withdrawn. The superintendent must address the grievant's allegations.

E. Within twelve (12) working days of receipt of the grievance, the superintendent will render a decision on the grievance and transmit said decision, with reasons stated to the grievant, the grievance clerk, and any direct party of interest. Time limit extensions may be requested, but such extensions may be granted only with the consent of the grievant.

F. If the superintendent fails to respond within the required twelve (12) day time limit the grievant may appeal his grievance to CORC. This is done by filing a Notice of Decision to Appeal (Form #2133) with the inmate grievance clerk.

G. If the grievant wishes to appeal the superintendent's response to CORC, he must file a Notice of Decision to Appeal (Form #2133) with the inmate grievance clerk within four (4) working days of receipt of that response.

H. All procedures, rights, and duties required in the processing of any other grievance as set forth in Section V above, unless otherwise stipulated in this section, shall be followed.

IX. ALLEGATIONS OF UNLAWFUL DISCRIMINATION. Allegations of acts or policies which adversely affect individuals based on race, religion, national origin, sex, sexual orientation, age, disabling condition(s) or political belief, except as provided by law, are of particular concern to the administrators of this Department and its facilities. Therefore, the following expedited procedure for the review of grievances alleging unlawful discrimination shall be followed:

A. An inmate who wishes to file a grievance complaint that alleges discrimination by an employee, program, policy or procedure shall follow the procedures set forth in section V-A-1, above.

Note: An inmate who feels he/she is being unlawfully discriminated against by an employee, program, policy or procedure shall report such incident to the immediate supervisor of the employee or supervisor/administrator of such program. However, this is not a prerequisite for filing a grievance with the IGP.

B. All grievances alleging unlawful discriminatory acts, policies or procedures shall be given a grievance calendar number and recorded in sequence with all other grievances on the grievance clerk's log (Form #2136).

C. All grievances alleging unlawful discrimination and related documentation are to be forwarded to the superintendent, and a copy shall be sent to the Office of Diversity Management within twenty-four (24) hours.

D. The superintendent shall initiate an in-house investigation by higher ranking supervisory personnel and/or request the Office of Diversity Management to conduct an investigation.

E. Within twelve (12) working days of receipt of the grievance, the superintendent will render a decision on the grievance and transmit said decision, with reasons stated, to the grievant, the grievance clerk, the Office of Diversity Management, and any direct party of interest.

F. If the superintendent fails to respond within the required twelve (12) day time limit the grievant may appeal the grievance to CORC. This is done by filing a Notice of Decision to Appeal (Form #2133) with the inmate grievance clerk.

NO. 4040  Inmate Grievance Program

DATE AUG 22 2003            PAGE 13 OF 14

G. If the grievant wishes to appeal the superintendent's response to CORC, he/she must file a Notice of Decision to Appeal (Form #2133) with the inmate grievance clerk within four (4) working days of receipt of that response.

H. The Director, Office of Diversity Management, or his/her designee shall be present whenever CORC reviews grievance appeals regarding alleged unlawful discrimination.

I. All procedures, rights, and duties required in the processing of any other grievance as set forth in Section V above, unless otherwise stipulated in this section, shall be followed.

NO. 4040 Inmate Grievance Program

DATE AUG 22 2003 PAGE 14 OF 14

## ATTACHMENT "A"

FORM 2141 (REV. 2/89)

X.

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES

## IGRC CODE OF ETHICS

A Code of Ethics for IGRC staff and Inmate Representatives, Clerks, and Chairpersons has been established to strengthen the credibility and effectiveness of the Grievance Program. Violations of this code may result in dismissal from participation in the Grievance Program

- A. No member shall obstruct an inmate from exercising his or her right to file a grievance nor ridicule an inmate or his or her grievance.
- B. A willing and tactful attitude is required in the performance of a member's duties.
- C. No member shall expect or receive preferential treatment because of his or her participation in the Grievance Program.
- D. Particular duties, responsibilities, and assignments shall not be abused by any member.
- E. Members shall not disclose information of a confidential nature except where necessary in fulfilling their duties under the grievance mechanism.
- F. Members shall be responsible for safekeeping grievance files and ensuring against unauthorized use.
- G. No member of IGRC shall intentionally undermine the IGRC's operation or credibility.
- H. Members of the IGRC shall have a working knowledge of the Inmate Grievance Program and their responsibilities as members.
- I. Members shall obey all Institutional and Departmental Rules and Regulations.

I have read, understand and discussed the above Code of Ethics with the Grievance Supervisor

_____     _____
IGP Member                             Date


_____     _____
Grievance Supervisor                   Date