UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
                                      :
LAURIE KELLOGG,                       :
                                      :
                          Plaintiff,  :
              v.                      : 07 cv 2804 (BSJ)(GWG)
                                      : **Opinion & Order**
NEW YORK STATE DEPARTMENT OF          :
CORRECTIONAL SERVICES, et al.         :
                                      :
                         Defendants.  :
                                      :
                                      :
-------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/15/09

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Laurie Kellogg brings this action pursuant to 42 U.S.C. § 1983, alleging violations of her rights under the First, Fifth, Eighth, and Fourteenth Amendments, arising out of sexual abuse/harassment, retaliatory conduct, due process violations, equal protection violations, conspiracy, deprivation of property, cruel and unusual punishment, and deliberate indifference to serious medical needs allegedly suffered by her at Bedford Hills Correctional Facility ("BHCF"). Plaintiff also alleges violations of the New York State constitution.

Defendants New York State Department of Correctional Services ("DOCS"), Commissioner Brian Fischer, Deputy Commissioner for Correctional Facilities Lucien Leclaire, Deputy Commissioner for Programs John Nuttal, Americans with Disabilities Act Coordinator Robert Raymond, Deputy Commissioner and Chief Medical Officer Lester Wright, former Superintendent Elaine Lord, Superintendent Ada Perez, former Deputy Superintendent of Security Terence McElroy, former Deputy Superintendent of

Security Gwen Schneider, Medical Director Lori Goldstein, Lieutenant Robert Ball, former Lieutenant Brandon Smith, Sergeant Mark Armstrong, Sergeant Gary Notaro, Correction Officer Michael Barclay, Correction Officer Barron Roger and Correction Officer Tracie Duncan move for dismissal pursuant to Fed. R. Civ. Proc. 12(b)(1) and 12(b)(6).

## BACKGROUND

Plaintiff is an inmate in BHCF. She alleges that after she refused sexual demands made by various facility officials, she received greater punishment, restrictions, and abuse by both guards and inmates and was designated a "tracker," an informal label that targeted her for heightened abuse and scrutiny.

Plaintiff alleges that her attempts to grieve or resolve her various abuses were stymied or ignored. Her complaints, Plaintiff alleges, only led to further retaliatory conduct.

Plaintiff also alleges that she was deliberately deprived of needed pain medication and treatments and that she suffered additional punishments as a result of her medical conditions.

Plaintiff's allegations are lodged against an array of prison officials, including supervisors, guards, and medical staff.

## DISCUSSION

### I. Withdrawn and Time-Barred Claims

Plaintiff, in her opposition to this motion, concedes certain issues and withdraws several of her claims.

Plaintiff concedes that her claims against DOCS and supervisory Defendants Fisher, LeClaire, Nuttal, Raymond and Wright (sued solely in their official capacity) are barred by the Eleventh Amendment to the United States Constitution and withdraws those claims. (Claims 12-15.) (See Pl. Opp'n p. 9.)

Plaintiff also concedes that she cannot maintain pendent state law claims against Defendants and withdraws these claims. (Claims 5-8.) (See Pl. Opp'n p. 9.)

Defendants' motion for dismissal of these claims is therefore GRANTED.

Plaintiff also concedes that "certain events" alleged in the Complaint occurred prior to April 6, 2004, placing them outside the statute of limitations, but argues that dismissal is premature because some of these acts constituted a "continuing course of retaliatory conduct." (See Pl. Opp'n at 11) The Supreme Court recently clarified that the continuing-violation doctrine does not apply to discrete acts, but only to ongoing circumstances that combine to form a single violation that cannot be said to occur on any particular day. *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113-15, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Plaintiff's complaint alleges discreet acts of abuse and retaliation, not a collection of circumstances forming a single violation.[1] The basis of each claim must therefore arise out of an event that occurred within the statutory period.

Any allegations of misconduct that occurred prior to April 6, 2004 cannot form the basis of a claim pursuant to § 1983. Therefore, Defendants' motion to dismiss those claims of retaliation, cruel and unusual punishment, due process, equal protection and

---

[1] As discussed below, Plaintiff's allegations concerning the "tracker" designation do not "combine to form a single violation." Rather, they describe a series of discreet punishments and abuses traceable to individual incidents. Therefore, Plaintiff may not rely on the "continuing-violation" doctrine for these, or other, claims.

conspiracy (against Defendants Lord, Goord, McElroy, Roger and Barclay) that solely describe events occurring prior to April 6, 2004 is GRANTED.

## II. Exhaustion

Defendants argue that the Complaint should be dismissed in its entirety for failure to exhaust administrative remedies as to all claims.

The Prison Litigation Reform Act of 1996 ("PLRA") requires that before a prisoner brings a suit for civil rights violations in federal court under 42 U.S.C. § 1983, all "administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).[2] The "boundaries of proper exhaustion" are set by the grievance procedures of an individual state. *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910, 923, 166 L.Ed.2d 798 (2007). However, a prisoner's fulfillment of his duty to exhaust his available administrative remedies under the PLRA is not a fact that the prisoner must plead in order to state a claim under 42 U.S.C. § 1983, but rather a fact that may be challenged by a defendant through an affirmative defense. *See, e.g.*, *Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir.1999); *Snider v. Melindez*, 199 F.3d 108, 114 (2d Cir.1999) ("A court may not dismiss for failure to exhaust administrative remedies unless the court determines that such remedies are available."). Here, Defendants have raised this defense and move for dismissal of all claims. Both sides have submitted supplemental material on this issue. As such, the Court will convert the motion to dismiss for failure to exhaust available administrative remedies to a motion for summary judgment pursuant to Fed. R. Civ. P. 56.

---

[2] The Supreme Court has held that the statute covers all claims related to living conditions, the behavior of prison staff, or any other abuses that might occur in prison, and applies regardless of the remedies sought by the inmate in a civil suit. *See Porter v. Nussle*, 534 U.S. 516, 526-28, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *Booth v. Churner*, 532 U.S. 731, 740-41, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001).

The New York State Department of Correctional Services "has a well-established administrative grievance procedure for prisoners called the Inmate Grievance Program ('IGP')." *Abney v. McGinnis*, 380 F.3d 663, 668 (2d Cir. 2004). The IGP is a "three-tiered grievance system, all levels of which must be exhausted" before an action may be brought in federal court. *Davis v. New York*, 492 F.Supp. 2d 331, 334 (S.D.N.Y. 2007).

In their motion, Defendants argue that Plaintiff failed to properly grieve any of the claims raised in her Complaint. (Def. Reply at 5.) Defendants submit an affidavit from Janaire Malloy, the IGP Supervisor at BHCF between October 2002 and August 2005, and Kim Watson, the current IGP Supervisor at BHCF. Both affidavits state that the claims alleged by Plaintiff constitute violations of BHCF's policies, regulations, procedures, and rules, and as such should have been grieved within the IGP. (See Def. Reply, Ex. 1, 2.)[3] Plaintiff appears to concede that she did not grieve her claims through the three levels of the IGP. (See Pl. Opp'n.)

However, "[u]nder the *Hemphill* line of cases, a court must make a three-step inquiry before it dismisses an inmate's complaint for failure to exhaust his remedies."[4] *Harrison v. Goord*, No. 07 Civ. 1806, 2009 WL 1605770, at *6 (S.D.N.Y. June 9, 2009). A court must consider: 1) whether administrative remedies were "available" to the inmate; 2) whether the defendant should be estopped from asserting the defense of failure to exhaust for inhibiting the ability of the inmate to pursue administrative remedies; and 3) whether "special circumstances" excuse the plaintiff's failure to pursue or exhaust

---

[3] Defendants also submit a handbook for the Inmate Grievance Program. (Def. Reply, Ex. 1,A.)

[4] There appears to be some debate as to whether the Hemphill three-part test survives the Supreme Court's decision in Woodford v. Ngo, 548 U.S. 81 (2006). See, e.g., Toomer v. County of Nassau, No. 07-CV-01495, 2009 U.S. Dist. LEXIS 38160, at *25 n.8 (E.D.N.Y. May 5, 2009) (collecting cases). Although the Second Circuit has not explicitly held that Hemphill remains good law, it has applied the three-part inquiry in recent cases. See Vogelfang, 2009 U.S. App. LEXIS 1914, at *5.

administrative remedies. *See Hemphill v. New York, 380 F.3d 680, 686-91 (2d Cir. 2004)*; *Vogelfang v. Riverhead County Jail Officers*, No. 07-1268-cv, 2009 U.S. App. LEXIS 1914, at *5 (2d Cir. Feb. 2, 2009) (citing *Hemphill*, 380 F.3d at 689-91) (summary order).

In her Opposition brief, Plaintiff argues that the procedures governing the IGP at BHCF have "been used to deny inmates in general and plaintiff in particular from filing meritorious grievances" and that her claims, "were properly made through other means and to appropriate persons or administrative officials responsible for such complaints within BHCF." (Pl. Opp'n.) Plaintiff also argues that "plaintiff has had legal and other papers removed from her cell during…retaliatory searches and the result is that she has only limited documents to support her claims of preservation through those channels made available to her." (Id.) In support of these arguments, Plaintiff has submitted an affidavit describing the various barriers and retaliatory conduct that allegedly prevented her from fully utilizing the IGP – including clerks who refused her grievances, procedural obstacles, and misinformation (Pl. Opp'n Ex. A). She also submits an Inmate Orientation Manual stating that victims of "sexual misconduct" should "report it immediately to any member of our Executive Team or to Inmate Grievance" (Pl. Opp'n Ex. C).

Because the materials submitted by Plaintiff demonstrate that there is a disputed issue as to whether administrative remedies were "available" to Plaintiff, as well as whether Defendants inhibited Plaintiff's ability to pursue administrative remedies by engaging in threatening and retaliatory conduct, it is premature to dismiss for failure to exhaust. The Court will instead grant Plaintiff's request to engage in discovery on this issue pursuant to Fed. R. Civ. P. 56(f). The motion for summary judgment on this issue

may be renewed after discovery is complete and both sides have had an opportunity to present supplemental materials.

### III. Deprivation of Property without Due Process

Similarly, Defendants argue that Plaintiff has failed to state a claim for deprivation of property without due process because New York provides an adequate post-deprivation remedy. It is inappropriate to determine at this stage whether the post-deprivation remedies available to Plaintiff were adequate. Plaintiff has alleged that they were not, and it is not apparent from the face of the complaint that this is incorrect. Defendants' motion to dismiss Plaintiff's claim of deprivation of property without due process is therefore DENIED.

### IV. Equal Protection

The Equal Protection clause directs state actors to treat similarly situated people alike. *See Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). To prove an equal protection violation, a claimant must prove purposeful discrimination, *see McCleskey v. Kemp,* 481 U.S. 279, 292, 107 S.Ct. 1756, 1767, 95 L.Ed.2d 262 (1987), directed at an identifiable or suspect class. *See Kadrmas v. Dickinson Pub. Schs.,* 487 U.S. 450, 457-58, 108 S.Ct. 2481, 2487, 101 L.Ed.2d 399 (1988); Giano v. Senkowski 54 F.3d 1050, 1057 (2d Cir. 1995). Or, in the alternative, a plaintiff may state a claim for an equal protection violation under a "class of one" theory. *Assoko v. City of New York,* 539 F.Supp.2d 728 (S.D.N.Y.2008). In order to state such a claim, a plaintiff must allege (1) that he was intentionally treated differently from other

similarly situated individuals; and (2) that the disparate treatment was either (a) "irrational and wholly arbitrary" or (b) motivated by animus. *Id.*[5]

Plaintiff claims that she was subjected to extraordinary punishments and abuses over the course of several years in BHCF. The Complaint alleges that, "Defendant Duncan is black, lesbian, and employed at BHCF as a guard," that "BHCF authorities are aware of Duncan's sexual orientation and preference for young, white inmates," that despite this, "BHCF officials allow Duncan to unilaterally decide upon and engage inmates in strip searches," and, more specifically, that, "Duncan has compelled Plaintiff to submit to multiple strip-searches, almost always done in highly irregular, sexually explicit and prurient ways." (Comp. para. 104.) The Complaint also notes that Plaintiff is a white woman. (Comp. para. 35.) Read broadly, the Complaint alleges that Plaintiff's discriminatory treatment–sexual harassment, unwarranted punishments, retaliatory restrictions, etc.–were motivated, at least in part, by her race and sex. Although these allegations may require substantial amplification at a later stage, they are sufficient to survive a motion to dismiss.

The Complaint may also be read to allege that Plaintiff constituted a "class of one" suffering disparate treatment. The Complaint alleges that Plaintiff received extraordinary punishments that were guided by no official policies, but were rather at the whim of individual guards who harbored ill-will toward Plaintiff for her refusal to engage in

---

[5] The standard for proving a "class of one" case becomes much more stringent after a case proceeds beyond the pleading stage. After the pleading stage, a plaintiff must show that "no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (that) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake." *Nielson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir.2005) *overruled to extent that it allows a class of one claim by a public employee Appel v. Spiridon*, 531 F.3d 138 (2d Cir.2008). *See, e.g., Cohn v. New Paltz Central School District*, 171 F. App'x 877 (2d Cir.2006).

in certain sexual acts and her subsequent complaints. These allegations may be read to state a claim for equal protection violations under a "class of one" theory.

Defendants' motion to dismiss Plaintiff's Equal Protection claims is therefore DENIED.

**V. Tracker Designation**

Defendants move to dismiss all claims that are based solely on the characterization of Plaintiff's "tracker" designation as a Constitutional violation.[6] Defendants argue that this designation does not implicate a liberty interest or a Constitutional right, and therefore may not give rise to an independent s. 1983 claim or a due process claim.

"A prisoner's liberty interest is implicated by prison discipline…only if the discipline 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life,' 'and…we look to actual punishment in making this determination.' Factors relevant to determining whether the plaintiff endured an 'atypical and significant hardship' include 'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions' and 'the duration of the disciplinary segregation imposed compared to discretionary confinement.'" *Palmer v. Richards,* 364 F.3 d 60, 64 (2d Cir. 2004) (citations omitted).

The Complaint alleges that "tracker" is an informal "designation" that "exists solely at BHCF." (Comp. para. 40.) This designation, the Complaint alleges, was applied at the sole discretion of Defendant Lord, subjected inmates to "unwanted and

---

[6] In their briefs submitted pursuant to this motion, the parties fail to identify the specific causes of action that rely solely on Plaintiff's "tracker" designation to state a claim. The Court will therefore address the question briefed by the parties – whether the "tracker" designation implicates a liberty interest so as to give rise to a Constitutional violation.

unwarranted attention…from other inmates," and rendered inmates "more susceptible to verbal, physical and sexual abuse and harassment within BHCF from guards and other inmates." (Comp. para. 42.) The Complaint alleges that this designation "has deprived and/or curtailed plaintiff of rights and privileges afforded other inmates without due process or grievance rights available since tracker status is not an authorized or recognized status under DOCS rules or state law." (Comp. para. 43.)

The individual punishments that are allegedly linked to Plaintiff's "tracker" designation may very well implicate liberty interests. However, Plaintiff may not separate the "tracker" designation from the punishments that were part and parcel of that designation in order to assert a Constitutional violation that is separate from and in addition to the incidents of punishment themselves. The "tracker" designation - which the Complaint alleges is (at BHCF) informal, unwritten, and applied wholly at the discretion of a single Defendant - is simply too informal and nebulous a concept to implicate, in its own right, a liberty interest. Plaintiff states that a wide assortment of disciplinary measures was taken against her as a result of the designation. However, such conclusory assertions of causation do not provide a factual basis for the Court to conclude that there is anything inherent in the "tracker" designation – as opposed to the individual incidents that are described in association with that designation – that implicates Plaintiff's liberty interests. In determining whether prison discipline is unlawful, courts are directed to look at the "actual punishment." *Palmer v. Richards,* 364 F.3d at 64. Based on the allegations, the "tracker" designation does not itself constitute the "actual punishment." It is instead a description of a long history of discreet incidents of punishment. For this reason, Plaintiff's "tracker" designation does not give rise to an independent claim for a

Constitutional violation. Plaintiff must instead identify actual incidents of punishment and bring claims based on those deprivations, rather than the designation associated with them.[7]

Defendants' motion to dismiss those claims that seek to state Constitutional violations by relying solely on Plaintiff's "tracker" designation (as opposed to the punishments that comprised that designation) is GRANTED.

## VI. Conspiracy

In order to state a claim for conspiracy under § 1983, a plaintiff must allege: (1) an agreement between two or more state actors or a state actor and a private entity (2) to act in concert to inflict an unconstitutional injury, and (3) an overt act done in furtherance of that goal, and causing some harm. *See Ciambriello v. County of Nassau,* 292 F.3d 307, 324-25 (2d Cir.2002). While the pleading standard for a conspiracy under Section 1983 is not entirely clear,[8] the Second Circuit has continued to apply the standard in *Ciambriello* that "complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed." *Ciambriello,* 292 F.3d at 325 (internal quotation marks and citations omitted); *see Walker v. Jastremski,* 430 F.3d 560, 564 n. 5 (2d Cir.2005) (noting that "conclusory or general allegations are insufficient to state a claim for

---

[7] In bringing claims based on actual incidents of punishment occurring within the statutory period, however, Plaintiff may explain or dispute the motivations behind the punishments by describing her history as a "tracker."

[8] In *Ciambriello,* the Second Circuit deemed the factual allegations of a Section 1983 conspiracy insufficient because the plaintiff had "not provided any details of time and place and failed to specify in detail the factual basis necessary to enable defendants intelligently to prepare their defense." 292 F.3d at 325 (internal citations and quotation marks omitted). In *Toussie v. Powell,* 323 F.3d 178 (2d Cir.2003), the Second Circuit declined to consider "whether [its] previous statements on the pleading requirements for [Section 1983] conspiracy allegations remain valid in light of two subsequent Supreme Court decisions" which rejected heightened pleading standards. *Id.* at 185 n. 3 ( citing *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) and *Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)).

conspiracy under § 1983" and citing *Ciambriello* ); *Farbstein v. Hicksville Pub. Library,* 254 Fed. Appx. 50, 51 (2d Cir. Nov.15, 2007) (summary order) (dismissing conspiracy claim where the "bare allegation of conspiracy [was] supported only by an allegation of conduct that is readily explained as individual action" and plaintiff failed to allege "a factual basis supporting a meeting of the minds ... to achieve the charged unlawful end") (internal quotation marks and citations omitted).

Here, Plaintiff has not provided a sufficient factual basis to support her conclusory allegations of a conspiracy amongst various guards and medical personnel to commit the abuses and violations alleged. Plaintiff names all Defendants as members of the conspiracy, but does not include any allegations that would allow the Court to determine that there was an agreement amongst, or concerted action taken by, the Defendants.

In alleging deliberate indifference to her medical needs, Plaintiff suggests that actions by Defendant McElroy required the "complicity" of Defendant Goldstein. (Comp. para. 85.) Similarly, Plaintiff alleges that various Defendants in supervisory roles at BHCF knew about certain violations but failed to stop or remedy them. While such allegations may be sufficient to show personal involvement by individual Defendants, they do not create a factual basis, or even a reasonable inference, that an active conspiracy was afoot amongst them.

Defendants' motion to dismiss Plaintiff's claim of conspiracy is therefore GRANTED.

**VII. Personal Involvement, State a Claim against Defendants**

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991)). Supervisory liability cannot rest on *respondeat superior* or on "linkage in the ... chain of command." *Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir.2003) (citing *Al- Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1065 (2d Cir.1989), and quoting *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985)). A supervisory official is deemed to have been personally involved in a constitutional violation if that official directly participated in the infraction; if, after learning of a violation, he failed to remedy the wrong; if he created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue; or if he was grossly negligent in managing subordinates who caused the unlawful condition or event. *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986).

*a. Defendants Ball and Armstrong*

Plaintiff alleges that Defendants Ball and Armstrong compelled Plaintiff "to have photographs taken of her in various stages of undress to 'document' non-existent injuries." (Comp. para. 102.) These allegations describe sexual harassment actionable under § 1983. With respect to this claim, therefore, Defendants' motion to dismiss is DENIED. With respect to all other claims in which Defendants Ball and Armstrong are named, Defendants' motion to dismiss is GRANTED.

*b. Defendant Perez*

The Complaint alleges that Defendant Perez was notified of sexual harassment, abuse, and retaliation against Plaintiff and failed to stop or remedy these violations.

(Comp. 104-108.) Such allegations claim personal involvement in events giving rise to causes of action under § 1983.

However, Plaintiff names, but does not allege Defendant Perez's personal involvement in events giving rise to her claims for deprivation of property without due process and deliberate indifference to serious medical needs. Defendants' motion to dismiss these claims against Defendant Perez is therefore GRANTED. Defendants' motion to dismiss the remainder of the surviving claims against Defendant Perez is DENIED.

*c. Defendant Schneider*

In her Complaint, Plaintiff alleges that she "wrote Defendant Perez [the BHCF Superintendent] describing a potential violent situation at BHCF. In response, plaintiff received a letter from [Defendant] Schneider [the BHCF Deputy of Security] threatening to have plaintiff placed in SHU should she ever write Perez again." (Comp. para. 111.) Although little detail is provided regarding this incident, it appears to support the preceding assertion that "Plaintiff's complaints to BHCF staff are ignored or result in further retaliation against her." (Comp. para. 110.)

Although a threat of adverse disciplinary conduct lodged against an inmate does not normally constitute a Constitutional violation, a threat that seeks to limit protected speech may. *See Aebisher v. Ryan,* 622 F.2d 651, 655 (2d Cir.1980) ("Where the use of coercive power is threatened, First Amendment rights may be violated by the chilling effect of governmental action that falls short of a direct prohibition against speech. The exercise of First Amendment freedoms may be deterred almost as potently by the threat of sanctions as by their actual application.") (citations omitted); *see also Zieper v.*

*Metzinger*, 392 F.Supp.2d 516, 525 (S.D.N.Y. 2005). Certain types of speech may not be protected in the prison context. For example, "an inmate does not retain those First Amendment rights that are inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system," *Jones v. N.C. Prisoners' Labor Union, Inc.,* 433 U.S. 119, 129, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977) (internal quotation marks omitted)) and "[p]etition[s] protesting prison conditions are not entitled to First Amendment protection where other less disruptive means of airing grievances are available." *Pilgrim v. Luther*, 2009 WL 1910727, at *4 (2d Cir. July 6, 2009). However, accepting the facts stated in the Complaint as true and drawing reasonable inferences from them, the Court finds that Plaintiff has alleged that she was engaged in a protected speech activity. Questions as to whether there were less disruptive means of airing her grievance, whether there were legitimate penological objectives for the note she received in response, and whether the incident actually occurred as alleged are more properly resolved at a later stage. At this stage, the Court assumes as true that Plaintiff was engaged in a valid, undisruptive method of complaint to prison supervisors. Plaintiff therefore states a s.1983 First Amendment claim against Defendant Schneider. .On this claim, Defendants' motion to dismiss is DENIED. For all other claims, Plaintiff includes no allegations as to Defendant Schneider's personal involvement, and Defendants' motion to dismiss is GRANTED.

*d. Defendants Smith and Notaro*

Plaintiff's sole allegations against Defendants Smith and Notaro concern false reports and false testimony related to a contraband charge lodged against Plaintiff in April 2004. (Comp. paras. 81, 96.) These allegations are actionable under § 1983 for

violation of due process, and Defendants' motion to dismiss these claims is DENIED. All other claims against these Defendants fail to allege their personal involvement and are DISMISSED.

### VIII. Deliberate Indifference to Serious Medical Needs

In order to allege an Eighth Amendment claim arising out of inadequate medical care, a prisoner must allege "'deliberate indifference' to [her] serious medical needs.'" *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) ( *quoting Estelle,* 429 U.S. at 104, 97 S.Ct. 285). This standard includes both (1) an objective "medical need" element measuring the severity of the alleged deprivation and (2) a subjective "deliberate indifference" element measuring whether the prison official acted with a sufficiently culpable state of mind. *Smith v. Carpenter,* 316 F.3d 178, 183-84 (2d Cir.2003).

The objective prong requires that the complainant's medical condition be "sufficiently serious." *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996). The subjective prong requires that the charged official must act with a sufficiently culpable state of mind. *See id.* "The required state of mind, equivalent to criminal recklessness, is that the official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998) ( *quoting Hathaway,* 99 F.3d at 553). Thus, to sufficiently state a § 1983 claim, Plaintiff must allege that Dr. Goldstein knew of and disregarded an excessive risk to her health and safety.

In her Complaint, Plaintiff alleges that she suffers from various illnesses and disabilities. She also alleges that Defendant McElroy knew of these medical conditions

and designed punishment and denied treatment in order to increase her suffering. (Comp. para. 84-91.) These allegations suffice to state a claim for deliberate indifference to serious medical needs.

As against Defendant Goldstein, Plaintiff alleges that Defendant Goldstein permitted the withdrawal of certain medication, denied Plaintiff her asthma pump, and failed to bring in a specialist or order ct scans during certain treatments of Plaintiff. (Comp. paras. 92-94.) These allegations do not plead improper treatment knowingly or intentionally rendered, or that Defendant Goldstein disregarded an excessive risk to Plaintiff's health or safety. At most, they allege disagreement as to proper treatment. As such, these allegations are not actionable.

Therefore, Defendants' motion to dismiss Plaintiff's claim of deliberate indifference to serious medical needs against Defendant McElroy is DENIED. Defendants' motion to dismiss Plaintiff's claim of deliberate indifference to serious medical needs against Defendant Goldstein is GRANTED.

**CONCLUSION**

Defendants' motion to dismiss is GRANTED in part and DENIED in part.

The following motions to dismiss are GRANTED: Defendants' unopposed motion to dismiss Claims 5-8 and 12-15; Defendants' motion to dismiss claims based on events occurring prior to April 6, 2004; Defendants' motion to dismiss those claims that rely on the "tracker" designation as an independent Constitutional violation; Defendants' motion to dismiss claims of conspiracy; and Defendants' motion to dismiss Plaintiff's claim of deliberate indifference to serious medical needs against Defendant Goldstein

The following motions to dismiss are DENIED: Defendants' motion to dismiss all claims for failure to exhaust administrative remedies; Defendants' motion to dismiss Plaintiff's claim of deprivation of property without due process; Defendants' motion to dismiss Equal Protection claims; and Defendants' motion to dismiss Plaintiff's claim of deliberate indifference to serious medical needs against Defendant McElroy.

As to Defendants' motion to dismiss certain claims for failure to allege personal involvement:

Defendants' motion to dismiss claims of sexual harassment under s.1983 against Defendants Ball and Armstrong is DENIED. With respect to all other surviving claims in which Defendants Ball and Armstrong are named, Defendants' motion to dismiss is GRANTED.

Defendants' motion to dismiss Plaintiff's claims against Defendant Perez for deprivation of property without due process and for deliberate indifference to serious medical needs is GRANTED. Defendants' motion to dismiss the remainder of the surviving claims against Defendant Perez is DENIED.

Defendants' motion to dismiss Plaintiff's claim against Defendant Schneider under s.1983 for a First Amendment violation is DENIED. Defendants' motion to dismiss all other surviving claims against Defendant Schneider is GRANTED.

Defendants' motion to dismiss Plaintiff's claim under s.1983 for violation of due process against Defendants Smith and Notaro is DENIED. Defendants' motion to dismiss all other surviving claims against Defendants Smith and Notaro is GRANTED.

**SO ORDERED:**

_____
**Barbara S. Jones**
**UNITED STATES DISTRICT JUDGE**

Dated:    New York, New York
          July 15, 2009